Loring *v.* Illsley.

LORING, respondent, *vs.* ILLSLEY, appellant.

*It seems* that, under the act of February 28th, 1850, this court has no appellate jurisdiction over judgments rendered by courts of First Instance, before the passage of that act, except *final* judgments.

What is a *final*, and what an *interlocutory* judgment or order, considered.

Judgment having been obtained against A., who was master and one-third owner of a certain bark, for the sum of $2000, in the court of First Instance, and his interest having been sold and purchased by B. *Held*, that a further judgment rendered in a subsequent proceeding, ordering that the *possession* of the bark should be delivered to B. was erroneous. *Held*, also, that such judgment is a *final* judgment, over which this court has appellate jurisdiction, under the act of February 28th, 1850.

Where process of a court, as an execution, commanding the sheriff to deliver possession of a chattel, has been *finally and completely executed*, the power of the sheriff under it, and the authority of the court to enforce it, cease: and a wrong doer, afterwards trespassing upon the person thus put in possession, cannot be deemed guilty of contempt for disobedience to the process of the court. *Per* BENNETT, J.

The title acquired by a third person, in good faith, under a judgment of the court of First Instance, while such judgment is in force, is protected by sec. 6 of the act of February 28th, 1850, and is not impaired or affected by the reversal of the judgment by this court.

Whether courts of First Instance have admiralty jurisdiction in proceedings *in rem:* Query?

Where the master of a vessel was one-third owner, and all his right, title and interest in the vessel had been sold under execution against him; *held*, that the purchaser of his one-third interest was not entitled to supersede the master in the command of the vessel, nor deprive him of the possession thereof.

The transfer of a minority interest in a vessel by virtue of a sale under execution, does not confer upon the purchaser any more extensive control than the execution debtor himself enjoyed; and, as a general rule, the majority of owners can control not only the employment and destination of a vessel, but also the appointment of a person to take charge of her as master. It does not alter the case, that the debtor was the master of the vessel, for his right to the possession and command is not the subject of sale on execution.

Loring *v.* Illsley.

THIS was an appeal from a judgment rendered by the court of First Instance for the district of San Francisco. The facts sufficiently appear in the opinion of the court. The cause was argued by

*Gregory Yale*, for the plaintiff, and

*P. A. Morse*, for the defendant.

*By the Court*, BENNETT, J. On the 17th day of December last, Richard S. Slaughter, Francis H. Reynolds, and Nathaniel Dean filed their several bills of complaint before the judge of First Instance of the district of San Francisco to recover damages for certain grievances claimed to have been committed against them respectively, while passengers on board of the bark Ella Frances, on her passage from Panama to San Francisco. After setting forth the cause of action, each of the complaints alleged that Frederick Illsley was part owner and master of the bark, and prayed that he and the other owners, when made known, and the bark itself might be cited to answer unto the complaint, and condemned *in solido* to pay the damages respectively claimed, and that the bark might be sold to satisfy the same. Summonses were therefore issued in the several suits, commanding *Illsley*, the master, to appear and answer the complaints. He accordingly did appear by his attorneys, and put in a *several* plea of the general issue on his own behalf. There was no answer put in on the part of the bark, or of either of the other owners, no process served upon them, no publication of notice requiring them to appear, and *no appearance of record* on their part. The causes coming on for trial, they were, by consent of parties, all tried together before the same jury, who rendered a verdict in each suit in favor of the plaintiff. Judgments were rendered for each of the plaintiffs against the " bark Ella Frances," &c., and executions upon such judgments respectively issued against the "bark Ella Frances and Illsley, master," under which, according to the return of the sheriff, endorsed on the executions, the " bark Ella Frances" was sold to the plaintiff,

James L. Loring, who was put in possession of the vessel by the sheriff. Illsley thereupon dispossessed Loring, and has retained possession of the vessel to the present time.

On the 7th day of February last, Loring filed his complaint in the court of First Instance, setting forth his purchase under the executions, the delivery of possession to him, his dispossession by force and violence, and praying restitution. Illsley put in his answer to this complaint and insisted therein, that he was entitled to the possession of the bark as master, and the court, after several continuances, gave judgment against him, and required him to deliver possession to Loring; from which determination an appeal is taken to this court.

By the judgment of the court of First Instance, it is declared " that in the sale of the bark Ella Frances, under the order and " decree of this court and by the sheriff of this court, James L. " Loring the plaintiff in this proceeding purchased all the right, " title, and interest of Frederick Illsley the captain and defen- " dant in the proceeding in and to said bark Ella Frances," and that Illsley had and owned at the time of the sale, " one- " third part of said bark Ella Frances in his own right." It is also set forth in the judgment that Illsley, as appeared from the register, represented the vessel and the other part owners, and it is adjudged that, in the suits under which the sale took place, he made a defence for the other owners as well as for himself. The record then proceeds as follows :—" The court, therefore, " orders, adjudges and decrees, that from and after said sale, and " by virtue thereof, all the right, title, and interest of the said " Captain Frederick Illsley in and to said bark Ella Frances, her " tackle, apparel and rigging, *including his right* to hold the " possession, control and command of the same, passed to and be- " came the right of the said James L. Loring." The judgment further orders the sheriff to deliver possession and to summon to his assistance the power of the county for that purpose, un- less before the 10th day of March, Illsley should pay to Loring the sum of two thousand dollars, the amount of the purchase money paid by the latter, with interest thereon, at the rate of five per cent. per month from the date of the sale, and also one

Loring *v.* Illsley.

hundred and fifty dollars for the fees of Loring's attorney, together with the costs of this proceeding.

Under this state of facts it is claimed by the counsel for the appellant: First, that the proceedings under which the bark was sold, were in substance suits *in personam* against Illsley, and not *in rem* against the vessel, and that no sale could have been made of any interest in the bark beyond the interest of Illsley as part owner. Secondly, that the master of a vessel can be displaced only by the majority of the part owners in a direct action in admiralty for that purpose; and thirdly, that courts of First Instance have no admiralty jurisdiction. The converse of the last two propositions is insisted upon by the counsel for the respondent, and also that the original suits may be regarded as proceedings either in admiralty or at common law, and that in either view they are legal and should be sustained. It is also contended by the counsel for the respondent, that the determination of the court below is not a final judgment from which an appeal can be taken to this court within the provisions of the act of February 28, 1850, regulating appeals; and, secondly, that if it be such a final judgment, the title of Loring to the bark is protected upon the ground of his being a purchaser, in good faith, while the judgments under which he holds were in force.

It becomes necessary, in the first place, to dispose of the question, whether this court can entertain an appeal from such a determination of the court of First Instance as is presented in this case. The act of February 28th provides, that an appeal may be taken from any *final judgment* of a court of First Instance rendered since the first day of January, A. D. 1847; and if the decision of the court below be a *final judgment*, an appeal lies—otherwise, not. What, then, is the distinction between an order and a final judgment? The former is a decision made during the progress of the cause, either prior or subsequent to final judgment, settling some point of practice or some question collateral to the main issue presented by the pleadings, and necessary to be disposed of before such issue can be passed upon by the court, or necessary to be determined in carrying into execution

Loring *v.* Illsley.

the final judgment. The latter is the determination of the court upon the issue presented by the pleadings, which ascertains and fixes absolutely and finally the rights of the parties in the particular suit in relation to the subject matter in litigation, and puts an end to the suit. The appeal in the case at bar is from a decision pronounced upon the trial of an issue formed by a complaint filed for a specific purpose, and an answer on the part of the person complained against. The subject matter in dispute is the possession of the vessel—the issue tendered by the pleadings is, which party has the right to that possession—and the award of the court decides that issue definitively in favor of the plaintiff, and puts an end to the litigation. The mutual allegations of the parties are more nearly analogous to pleadings in original suits, than they are to papers upon which motions for interlocutory orders are made, and the decision of the court is in form, phraseology and effect a final judgment.

But further, after the sale under the executions, Loring was put into possession of the bark by the sheriff. The process of the court was thus finally and completely executed, and from that moment the power of the sheriff under it, and the authority of the court to enforce it, ceased. The sheriff was not, by virtue of the mandate of the executions, required to *keep* the purchaser in possession, nor could the court order fresh executions or other process to issue commanding him to that effect. Neither could the court deem the defendant in contempt for disobedience to its process, because, that, having been fully and completely executed and obeyed, had spent its force and was of no further effect. If Loring was afterwards dispossessed by Illsley without right, he is left to the same mode of redress, to which he would have been obliged to resort, in case he had been despoiled of his possession by any other wrong doer ; that is, to an ordinary suit to procure restitution. The decision appealed from cannot, therefore, be regarded as an order made in the original suits, and if it is not a final judgment, within the meaning of the act of February 28th, it is no authorized legal proceeding of any description.

Loring *v.* Illsley.

It is contended by the counsel for the respondent that Loring is a purchaser in good faith. The last clause of sec. 6 of the act above referred to, provides that no reversal of any judgment or order of the court of First Instance by the supreme court shall take away or impair rights acquired by third persons, in good faith, under such judgment, while it was in force. The judgments under which Loring claims were in full force at the time of the purchase by him, and any rights which he acquired thereby must be protected. But this in no manner alters the point in dispute, for the question recurs, what rights did he acquire—a title to the whole bark, or only to the minority interest of Illsley? And these questions involve the inquiry, whether the cases of Slaughter and others are to be regarded as suits in admiralty *in rem*, or proceedings *in personam* in the ordinary course of judicial investigation; if the former, then the whole bark must have been sold; if the latter, the interest of Illsley only can have been disposed of—for under proceedings in admiralty *in rem*, the interest of one part owner cannot be sold to satisfy a demand due from the vessel itself, whilst in suits *in personam* in courts other than admiralty courts, no man can be deprived of his property without first having been personally cited to appear and make his defence, unless by virtue of some positive statutory enactments.

It is difficult to say from an examination of the pleadings and other papers in the original suits, whether they were intended as suits in admiralty or as common law actions. We think it would be difficult to sustain them as admiralty proceedings in consequence of want of conformity to the practice in such cases, whether we are to be governed by the course of practice of the Mexican Republic or in the United States; and we are of opinion that the judgment from which this appeal has been taken furnishes sufficient reasons why we should regard those former suits as ordinary actions *in personam* against Illsley alone. That declares that Loring purchased the interest of Illsley, being one-third part of the bark, without any claim that he acquired a title to the interests of the other part owners; and although it alleges that he made a defence for them, yet it seems

that such defence was necessarily connected with his own, and which he could not well avoid without at the same time abandoning his own. We do see that neither of the other owners in any way appeared upon the record, or made any defence of record. Again, if the court below had deemed that anything more than Illsley's interest had been sold, it would scarcely have made an order requiring the payment of the $2000 and interest, as the condition of his being allowed to retain possession of the vessel. We are, therefore, of the opinion that the suits under the judgments in which the sale took place should be regarded as proceedings *in personam* against Illsley alone, and not *in rem* against the vessel—that only his rights have been affected thereby—and that his interest only was sold under the executions and purchased by Loring. If we are correct in this view of the case, it becomes unnecessary to pass upon the question, which was so elaborately argued at the bar, whether courts of First Instance have admiralty jurisdiction.

The question then arises, what was the extent of the rights acquired by Loring under his purchase of the interest of Illsley? Did he gain the right of the latter to hold possession of the vessel as master, superadded to his interest as part owner? We consider the question by no means unembarrassed with difficulties. No authorities were cited upon the argument bearing directly upon the point, or showing anything more than the general rights of owners and masters of vessels; and in our own researches through the limited number of books at our command we have not been able to find a solution of the case, and are thus left to deduce our conclusion from general principles.

On the one hand, we are met with the argument, that a sheriff under an execution must necessarily take possession of the personal property upon which he levies—that being authorized to seize the interest of one of several part owners in a chattel, he must take the sole possession of it, in order that it may be forthcoming at the day of sale—and that after the sale he may deliver it over to the purchaser; and, applying this doctrine to the present case, that the sheriff, having taken possession of the vessel, and retained it down to the time of sale, not only had

Loring *v.* Illsley.

the right but was obliged to transfer that possession to Loring. On the other hand, we are reminded that a master of a ship is appointed by the majority of owners, and cannot be removed by the minority, and that this rule is equally applicable after the sale of a part interest under execution, as in case of a voluntary transfer.

The conduct and management of a ship are always entrusted to the master, whether he has or has not a partial property in it; and in either case he is the confidential servant or agent of the owners at large. (*Abbott on Shipping*, 123, 124, *London Ed.* 1844.) Personal trust and confidence are reposed in him by the owners on account of his known or supposed experience and skill, and as a general rule, the majority of owners can control not only the employment and destination of the ship, but also the appointment of the person to take charge of her as master. (*Id.* 98, 99, *and note "f" on page last cited.*) The voluntary transfer of a minority interest in a ship does not confer upon the purchaser any more extensive control than the vendor himself enjoyed; and it is difficult to see why a forced sale under execution should have any greater effect than a voluntary transfer. If a distinction be made, then in case of a sale under execution of a minority interest, however trifling it may be, power is given to the minority to usurp the legal right of the majority in appointing or discharging the master, and in controlling the management of the affairs of the vessel. In the case before the court, two-thirds of the bark are owned by citizens of the Atlantic states, who have entrusted her to the prudence and skill and experience of a master selected by them; and it is sought to deprive them of their legal control, and give it to the owner of but one-third. We think this ought not to be done. The fact of the person, whose interest has been sold under the executions, being also the master, can work no change in the principle. The master of a vessel, *as such*, has no interest in it, which can be the subject of levy and sale under execution. He is but a naked agent—and a naked agent, whether the subject matter of his agency be a ship or any other chattel, has no substantial interest in the property which

can be levied upon and sold; and although the interest of Illsley as part owner has passed to Loring, by virtue of the sale, his agency as master is in no way affected.

So much, therefore, of the judgment of the court below as determines that the right of Illsley to hold the possession, control and command of the bark *Ella Frances* passed to and became the right of Loring, and requiring the former to yield up and deliver possession of the same to the latter, must be reversed. This leaves Loring the owner of the interest of Illsley, and entitles him to compel an account of the profits which the bark may make, in the manner prescribed by law for compelling accounts between joint owners of vessels.

An order will be entered accordingly.