McLaughlin v. Kelly.

situated, and he is only bound by constructive notice of what may there appear. The rules of law relating to actual notice of a pending action, and the effect of such actual notice upon parties dealing with or taking possession of property in litigation, are in no sense changed by this section of the Practice Act, but remain the same as before this law was passed. (*Richardson* v. *White*, 18 Cal. 102; *Bensley* v. *Mountain Lake Water Co.*, 13 Id. 306; *Head* v. *Fordyce*, 17 Id. 149; *Ault* v. *Gassaway*, 18 Id. 205.) In these cases the purchaser or incumbrancer had no actual notice, but the principle was clearly laid down, that the filing of the notice was intended as a substitute for the rule that the pendency of the suit was itself constructive notice; and as relating to the question of constructive notice, and not of actual notice. Green, in this case, had actual notice, which was better than the mere constructive notice resulting from a paper filed under this section of the statute, and he is as much bound by the judgment as if that law had been complied with.

The order made by the Court below is reversed, and the Court is directed to dismiss the petition of Green, and set aside all the proceedings under it.

---

## McLAUGHLIN *et al.* v. KELLY *et al.*

| 22 | 211 |
|----|-----|
| 96 | 313 |
| 22 | 211 |
| 146 | 416 |

IN an action for a trespass upon a mining claim, where the complaint avers that defendants are working upon and extracting the mineral from the claim, and prays for a perpetual injunction, and the answer admits the entry and work and takes issue upon the title; if a jury to whom the issue of title is submitted find in favor of the plaintiffs, it is the duty of the Court to decree the equitable relief sought, and enjoin defendants from future trespasses.

The complaint charged that defendants had wrongfully entered upon a tract of mining ground (described by metes and bounds) owned by the plaintiffs, and had extracted therefrom gold-bearing earth of the value of $1,000, and that they threatened to continue their wrongful acts, and prayed for damages in the sum of $1,000, and for a perpetual injunction. The answer set up title in defendants to a specific portion of the tract claimed by plaintiffs, and denied that they had worked upon any other portion than that to which they thus asserted title.

The jury under a general submission found "a verdict in favor of plaintiffs with one dollar damages:" *held*, that the verdict decided the question of title in

favor of plaintiffs, and that upon it they were entitled to a decree perpetually enjoining defendants from working upon the ground claimed in the complaint; that this equitable relief was a matter of right, the denial of which by the District Court was error.

The Court in the case above cited having instructed the jury that, if they found that plaintiffs were entitled to the mining ground, they must find a verdict for $1,000 damages upon the admissions of the answer: *held*, that because the jury brought in a verdict for one instead of one thousand dollars' damages, it was not therefore to be concluded, in direct opposition to their general verdict, that they did not find the title in the plaintiffs. The damages being admitted by the pleadings were not in issue, and the verdict in that respect was immaterial.

It is no reason for refusing a perpetual injuction in an action of trespass in which the title has been litigated, that' defendants will thereby be precluded from asserting their title in any other form of action. When there has been a fair trial of an issue of fact, Courts give the verdict and judgment a conclusive effect, and will not permit the parties to relitigate the same matter in another suit.

Where in an action of trespass the jury find generally "for the plaintiffs," it is a finding upon all the issues raised by the pleadings material to a recovery by the plaintiffs, and concludes the parties upon a question of title where it was distinctly put in issue.

Under our code of practice to ascertain what was in fact determined by the findings or verdict, we must look solely to the material facts put in issue by the pleadings, and not to the form of the action.

The mere fact that the pleader has used terms of expression in stating his case which were under the old system of practice used in particular kinds of action, will not necessarily give character to, or determine the effect or meaning of, the verdict.

APPEAL from the Seventeenth Judicial District.

The nature of the action and the character of the issues raised by the pleadings are fully stated in the opinion. The form of the allegation of damage in the complaint, following a description of the entire premises claimed by them, is that defendants " then and there," with picks, etc. " dug, mined out, removed, and converted to their own use, divers large quantities of gold and gold-bearing earth, and gravel of great value, to wit: of the value of $1,000," to the damage of plaintiffs in that sum. The only reference to the subject of damage in the answer, is a denial that defendants have done any work west of the line as claimed by them.

The statement of the evidence on the trial, as set forth in the record, is as follows: " Whereupon a jury was regularly impan-

McLaughlin *v.* Kelly.

neled to try the cause, and the parties respectively introduced testimony in support of the issues on their part. It was in evidence, that defendants had worked and mined in that part of the mining ground claimed in the complaint and replication, and lying east of the Carter line, running north fifty-seven degrees and forty-five minutes west (the line claimed by defendants). There was evidence tending to prove that defendants had run an air tunnel through a portion of plaintiffs' ground west of said Carter line, and that this last mentioned tunnel was run by the consent of the plaintiffs ; also, that in working along said line, the defendants had in several places broke over the same and caved down a little dirt from the west side thereof, and at the same time, plaintiffs told defendants they need not be very particular about the line, or about going over the line."

The instructions were almost entirely directed to questions respecting the title to the triangular piece of ground put in issue by the pleadings. In each of three instructions, given at request of defendants, the jury were told that, upon a certain hypothesis of facts respecting title to the triangle above mentioned, they must find for defendants, " unless they find that defendants worked on the west side of the Carter (N. 57° 45′ W.) line." On the subject of damage the Court instructed as follows: " The answer in this case admits that the defendants have extracted gold of the value of $1,000 from the ground claimed by plaintiffs in their complaint, and during the time therein alleged, and if the jury believe from the evidence that plaintiffs at the time of the alleged trespass were entitled to the possession of such ground, they should find a verdict in favor of plaintiffs for $1,000 damages."

The verdict was as follows : " We the jurors in the case of *Chas. McLaughlin* v. *Peter Kelly et al.*, do find a verdict in favor of the plaintiffs, with one dollar damages.

L. W. KEYES, Foreman."

*Taylor & Cowdery* and *Will Campbell*, for Appellants.

I.   The jury found a general verdict in favor of plaintiffs, which included all the issues, and therefore entitled plaintiffs to the equitable relief prayed for.

" A general verdict is that by which they (the jury) pronounce

McLaughlin *v.* Kelly.

generally upon all or any of the issues." (Prac. Act, Sec. 174.) Where there is more than one issue, and all the issues are submitted to the jury, it is their duty to pass upon all, and the Court will, when the verdict is general, presume that the jury did find upon all the issues. (*Brockway* v. *Kinney*, 2 Johns. 210.) In *Chapman* v. *Smith* (16 How. 133), where there were fourteen counts, the Court said : " The omission to levy upon the goods, or to sell after the levy, fell directly within the issue, * * * and we are bound to presume were the subject of examination before the Court and jury, and were passed upon by them." The issues in this case stand precisely as if the complaint contained two counts, one for trespass on the ground east of the line fifty-seven degrees and forty-five minutes, and one for trespass west of that line, and the defendants had pleaded to the first count, *liberum tenementum*, and to the second the general issue. Now, supposing one of these counts to have been bad, and the other good ; the rule in this country is, that if any of the counts are good, it shall be presumed the damages were assessed on those counts, and the verdict shall stand. For if the defendant wishes to question the sufficiency of any of the counts, he may demand separate verdicts upon each count, and unless he do so, the general verdict shall be conclusive against him. (*Wolcott* v. *Coleman*, 2 Conn. 337 ; *Stamford Bank* v. *Ferris*, 17 Id. 259.)

II.     Although formerly, in the Courts of Chancery, the finding of a jury upon an issue was not binding upon the Chancellor ; yet wherever the foundation of a claim was a legal demand, the Court would order a trial at law (2 Daniel's Ch. Pr. 445), and the result was regarded as conclusive. (*Booth* v. *Blundell*, 19 Ves. 500.) Pending the trial the Court would restrain all injurious proceedings, and when the right was so established would decree a perpetual injunction. (2 Story's Eq. Jur. Sec. 927 ; Id. Sec. 1478 ; *Livingston* v. *Van Ingen*, 9 Johns. 569, and Chancellor Kent's opinion therein, 585.) In this State, however, the Chancellor's (Judge's) discretion in the matter is regulated and qualified by the statute ; the equitable relief prayed for must follow the verdict for plaintiff (if consistent with the case), unless the defendant move for and obtain a new trial. (*Duff* v. *Fisher*, 15 Cal. 379, *et seq.*)

The granting of a temporary injunction rests in the sound discretion of the Court (Willard's Eq. Jur. 341, and cases there cited), but a decree of perpetual injunction may be a matter of strict right. (*Ogden* v. *Kip*, 6 Johns. Ch. 160; *N. Y. Printing and Dyeing Estab.* v. *Fitch*, 1 Paige's Ch. 98; 3 Daniell's Ch. Pr. 188; *Mitchell* v. *Dorr*, 6 Ves. 147; *Crockford* v. *Alexander*, 15 Id. 138; *Thomas* v. *Oakley*, 18 Id. 186.)

III.    The record shows that the issue of *liberum tenementum* as to the ground between the lines forty-eight degrees and forty-five minutes and fifty-seven degrees and forty-five minutes, was tried and found in favor of plaintiffs; the defendants admit the plaintiffs' title to the ground west of the line fifty-seven degrees and forty-five minutes. The plaintiffs are therefore entitled to a perpetual injunction restraining defendants from working or mining upon any portion of the ground described in the complaint. (*Mitchell* v. *Dorrs*, 6 Ves. 147; *Smith* v. *Collyer*, 2 Id. 90; *Gray* v. *Duke of Northumberland*, 17 Id. 281; 2 Story's Eq. Jur., Sec. 929; *Merced Mining Co.* v. *Fremont*, 7 Cal. 320, *et seq.; Henshaw* v. *Clark*, 14 Id. 464.)

It is contended that taking the pleadings alone, in connection with the verdict, we cannot determine that the jury necessarily decided that plaintiffs had made out title to the disputed ground, for that it might be the trespass was committed upon the portion of their ground, the title to which was not controverted. The plea as to the disputed portion is *liberum tenementum*, which of course denies the title, and admits a *prima facie* trespass; and a verdict upon this plea necessarily decides the title; in other words, the jury must necessarily have found the title to be in plaintiffs, before they could find a verdict in favor of plaintiffs, for damages. Therefore, this issue having been tried in this case, and the verdict being in favor of plaintiffs, defendants would in another suit be estopped from denying plaintiffs' title.

IV.    It would not avail defendants anything, in another action in relation to the gore between the lines forty-eight degrees and forty-five minutes and fifty-seven degrees and forty-five minutes, to say that upon the pleadings in this case two issues were made, and that the verdict of the jury might have been based upon that part

of the defense which raises the general issue.   In such suit these plaintiffs would have a right to show by parol that in this case the issue of title was tried.   The rule is this: in order that a judgment in one action shall be conclusive in another, it must appear with convenient certainty that the question in controversy in the second suit was litigated and decided in the first.   Where this is apparent on the face of the proceedings, in the former action, the mere production of the record will be enough; but where it is not, it may be shown by parol evidence, if the record show that the same matter might have come in question in the former suit. (*McKnight* v. *Dunlap*, 4 Barb. 44; *Bebee* v. *Elliott*, Id. 459; *Briggs* v. *Wells*, 12 Id. 569; *Davis* v. *Talcott*, 14 Id. 619; *Lawrence* v. *Hunt*, 10 Wend. 85; *Young* v. *Rummell*, 2 Hill, 481; *Doty* v. *Brown*, 4 Comstock, 75; *Birckhead* v. *Brown*, 5 Sandf. 145; *Rogers* v. *Libby*, 35 Maine, 200; *Gray* v. *Gillilan*, 15 Illinois, 453; *Baker* v. *Rans*, 2 Gilman, 355; *Stuker* v. *Butler*, 17 Alabama, 133; *Young* v. *Black*, 7 Cranch, 567; *Chapman* v. *Smith*, 16 How. 133; *Duchess of Kingston's Case*, 11 State Trials, 261, cited in 2 Smith's Leading Cases, 676, *et seq.*)

We have shown conclusively that the title of the ground east of the line fifty-seven degrees and forty-five minutes and west of the line forty-eight degrees and forty-five minutes was actually in issue in this case, and that each issue was actually tried, and found in favor of the plaintiffs.

*Vanclief & Bowers* and *A. I. Williams*, for Respondents.

I.   The perpetual injunction asked for, would conclusively settle the title to all the ground described in plaintiffs' complaint in favor of the plaintiffs (appellants here), and forever preclude and estop the defendants from disputing it, or recovering any portion of the ground in any other action.   The verdict of the jury was general and assessed the damages at one dollar.   For all that appears, the basis of this verdict may have been a trespass on that portion of the ground west of the Carter line, as to which the defendants merely denied the trespass but claimed no title; and, that it was so, the record discloses strong reasons for believing; 1st, the evidence showed a technical trespass west of the Carter line, for which

McLaughlin *v.* Kelly.

more than nominal damages might have been given.   Defendants had broken over that line, and caved down dirt in several places, and had run an air tunnel west of said line ; 2d, on the motion of plaintiffs, the Court instructed the jury, that the answer of defendants admitted that defendants had taken gold of the value of $1,000 from the ground in dispute, and that if they believed that plaintiffs were entitled to the possession of such ground, they should find a verdict in favor of plaintiffs for $1,000.   This of course refers to the ground east of the Carter line as to which defendants pleaded title in themselves.   If, then, the jury found the plaintiffs were entitled to the ground east of said line, they must have disregarded this positive instruction of the Court, as they assessed the damages at one dollar only ; 3d, the record shows that it was granted by defendants and understood by the Court and jury at the trial, that the jury might find from the evidence a trespass by the defendants on the west side of the Carter line, for such a contingency was provided for and expressed in each one of the three instructions asked by the defendants which were given by the Court.

It would be sufficient for our purposes if it appeared uncertain whether the verdict of the jury was predicated upon a finding of the title in the plaintiffs as to all the ground described in their complaint east of the Carter line, but from the foregoing considerations it is made to appear morally certain, that the sole ground of the verdict was the finding of a technical trespass on the west side of said line, for which they gave merely nominal damages.

We claim the law applicable to this case in the view above taken to be that expressed in the opinion of the Chancellor in *Wood* v. *Jackson* (8 Wend. 36), as follows : "A verdict cannot be urged as an estoppel to the litigation of a fact, which was not absolutely necessary to the finding of the verdict in the previous suit.   And the Court will never go into an examination of the jurors in the former cause to ascertain upon what grounds their verdict was pronounced. Neither will a verdict be considered as an estoppel merely because the testimony in the first suit was sufficient to establish a particular fact." (See also *Davis* v. *Talcott*, 14 Barb. 612 ; *W. A. & G. S. P. Co.* v. *Sickles et al.*, 24 How. 333 ; *Kidd* v. *Laird*, 15 Cal. 182.)

15

McLaughlin *v.* Kelly.

The rule was extended to its utmost limits in *Birckhead* v. *Brown* (5 Sanf. 134) where Mr. Justice Duer expresses it as follows: "It is that as between the parties and privies a judgment is conclusive as to every question upon which the right of the plaintiff to recover, or the validity of a defense in another suit, is found to depend, and upon the determination of which it appears from the record, or is shown by extrinsic proof that the judgment was in reality founded."

Counsel for appellants invokes the rule which supports a general verdict on several counts where only one of such counts is good. The reason for this rule is, that it does not appear that the verdict was rendered on the bad counts, and for the purpose of supporting it and giving it effect the law will refer it to the good count. If in such case, it could be made to appear certain that the verdict was solely on the bad count, judgment upon it would be arrested, as in case of a declaration wholly bad.

These reasons do not support the rule contended for in this case. Here, the verdict is supported and takes its legal effect without the perpetual injunction; and if it be uncertain whether the jury passed upon the issue of title, or if so, to what extent, or whether they found it in favor of plaintiffs or defendants, surely it should not be conclusively assumed that they found it wholly against the defendants for the purpose of perpetually enjoining them from entering on any portion of the premises.

II.   But another and different view of the case will dispose of it in favor of the respondents.   Admitting for the argument, that the plea of *liberum tenementum* applied to the whole of the close described in the complaint, or that there had been no issue as to that portion of the ground west of the Carter line, still the general verdict for plaintiffs would not conclusively, or even *prima facie* establish their title to the whole of the ground covered by the terms of the plea.

The *locus in quo* is a divisible allegation, and although the plea of *liberum tenementum* be applied generally to the whole of it, proof that the part in which the trespass was actually committed was the freehold of the defendant, will be a good defense, although the title to the other portions of it is shown to be in the plaintiff;

and a failure of defendant to prove title to that particular part in which the trespass was committed, will entitle the plaintiff to recover, even though it be proven that all other portions of the *locus in quo* is the freehold of the defendant. (2 Greenl. Ev. Sec. 626 ; *Rich* v. *Rich*, 16 Wend. 665 ; *King* v. *Dunn*, 21 Id. 253 ; *Dunkle* v. *Wiles*, 5 Denio, 299 ; *Same case*, 1 Kern. 421 ; *McDonald* v. *Bear River W. Co.*, 15 Cal. 147.)

Suppose it had appeared to the jury that the trespass for which they assessed the damages was committed on a very small portion only of the ground as to which defendants pleaded title, and at the same time that defendants were entitled to all other portions of that ground, must not the verdict have been for the plaintiffs ?

There is a plain distinction between this case and such cases as *Brockway* v. *Kinney* (2 John. 210) and *Chapman* v. *Smith* (16 How. 133) cited by appellants' counsel. To do this it is only necessary to observe the difference between the issue raised by a plea of *liberum tenementum* in actions of trespass *quare clausum fregit*, and the issues in the cases cited. In the former, the substance of the issue only relates to that specific part, or spot of the *locus in quo* as described in the declaration, in which the alleged trespass was actually committed; whereas, in the latter, the substance of the issues extends to all that is alleged and denied. In the former, the allegations include much that is immaterial and not of the substance of the issue ; while in the latter, the substance of the issue is as broad as the language of the pleading, and extends to the extreme boundary of each allegation.

In the case of *Brockway* v. *Kinney*, the plaintiff in the former suit had declared on a promissory note, and also for work and labor, and of course the allegations of the making and delivery of the note, the sum alleged to be due upon it, also every day's work and every dollar of the price, or value of it, if denied by the plea, were of the substance of the issues, and must have been passed upon by the general verdict of the jury.

But, in an action of trespass *quare clausum fregit*, the allegation of the complaint may be, that the trespass was committed on one hundred acres, particularly describing it, and the answer, that the said one hundred acres is the soil and freehold of the defendant,

and a replication completely traversing the answer. Yet, if it appear from the evidence, that the actual trespass was only committed on one acre, the substance of the issue of title is confined to that one acre, and determines the title to it alone.

CROCKER, J. delivered the opinion of the Court—COPE, C. J. and NORTON, J. concurring.

The complaint in this case avers that the defendants unlawfully entered upon certain mining ground owned by the plaintiffs and in their possession, and mined out, removed, and converted to their own use large quantities of gold and gold-bearing earth, of the value of $1,000 ; that the defendants have no right to said mining ground, but are wanton trespassers thereon ; that they are still mining the ground, the sole value of which consists of the gold therein ; that, unless restrained, they will mine out the best and most valuable portion of the ground before the determination of the suit; and concludes with a prayer for judgment for $1,000, for a temporary, and on the final hearing, a perpetual injunction, and for general relief. The answer of the defendants denies that the plaintiffs ever were the owners or in the possession of the *whole* of the mining ground claimed in the complaint, or of any portion upon which they, the defendants, have ever mined, or from which they have ever removed any gold or gold-bearing earth of any value ; they aver that they are the owners and in possession of certain mining ground in the same vicinity which they describe, and then deny that they have ever mined or removed any gold-bearing earth from any part of the ground described in the complaint, except so much thereof as may be within the boundaries of their own claims, to which plaintiffs had no right, title, or possession. The replication denies that the defendants owned or possessed the premises described in the answer, or any portion thereof, except such portion as may lie easterly of a line drawn from a certain stake, mentioned in the description of defendants' mining ground, and running north forty-eight degrees forty-five minutes west by magnetic meridian, but on the contrary plaintiffs are the owners and possessors of the ground lying westerly of said line. The pleadings are duly verified. The cause was tried by a jury, who found " a verdict in

favor of the plaintiffs, with one dollar damages." A temporary injunction had been granted at the commencement of the suit. The Court rendered a judgment in favor of the plaintiffs for one dollar, without costs, and ordered the temporary injunction to be dissolved. The plaintiffs asked the Court to render a judgment upon the verdict for one dollar, with costs, and for a perpetual injunction against mining the ground described in the plaintiffs' complaint, which was refused by the Court, and to which the plaintiffs excepted, and they prosecute this appeal from the order dissolving the temporary injunction and the refusal to grant the perpetual injunction.

It appears that these parties own adjoining mining grounds, and that the premises in dispute is a gore of land lying between the undisputed portions of their respective claims, the plaintiffs' claim lying westerly and the defendants' easterly of this gore. This disputed piece of land lies between two lines, both commencing at a certain stake, the one line running from this stake north forty-eight degrees forty-five minutes west, and the other north fifty-seven degrees forty-five minutes west, a difference of nine degrees; the plaintiffs claiming that their mining ground extends to the former line, while the defendants claim that theirs extends to the latter line. This issue is clearly, plainly, and distinctly presented by the pleadings, and the plaintiffs contend that as the verdict was for them this issue was found by the jury in their favor; that they were therefore entitled to a perpetual injunction restraining the defendants from mining upon any portion of the ground described in their complaint, and that the Court erred in refusing it. A careful examination of the pleadings clearly shows that the question of ownership of this gore of land was, in truth, the main fact in issue in the case. All the other material allegations were not denied, and were therefore admitted. Even the question of damages, which was passed upon by the jury, was not in issue, because the allegation of the complaint on that point was not specifically denied by the answer. The plaintiffs averred that they were the owners of a certain tract of mining ground, describing its boundaries, which include the gore in controversy; the defendants deny that the plaintiffs are the owners of this gore, and aver that they own a piece of mining land, describing it, which includes it. If a

question of ownership and title was ever put in issue in any case, they certainly were in this; and when the jury by their verdict found for the plaintiffs, they clearly found this issue for them. None of the allegations in the complaint on which the injunction prayed for is founded are denied by the answer, and they are therefore admitted; and the only issue of fact being found for the plaintiffs, they were clearly entitled to that relief.

But it is objected by the respondent that the perpetual injunction would conclusively settle the title to all the ground described in the plaintiffs' complaint in favor of the latter, and forever preclude and estop the defendants from disputing it, or recovering any portion of the ground in any other action, and therefore it ought not to be granted. Very probably such would be the result. Such is usually the result of trials where a question of fact, material to the determination of the suit, has been fairly tried and a verdict and judgment has been rendered thereon. The principal object of actions is to produce just such a result; that is, to finally settle the controversy and put an end to litigation and strife. When there has been a fair trial of such an issue, Courts usually give the verdict and judgment a final and conclusive effect, and will not permit the parties, or those claiming under them, to relitigate the same matter in another suit. (*Loring* v. *Ilsley*, 1 Cal. 28; *Soule* v. *Dawes*, 14 Id. 248; *Kid* v. *Laird*, 15 Id. 162; *McDonald* v. *The Bear River and Auburn Water and Mining Co.*, Id. 145; *Robinson* v. *Howard*, 5 Id. 428; 2 Phillips' Evidence, C. H. & E.'s Notes, 18, notes 261, 262).

It is also urged that the verdict of the jury *may* have been founded upon other matters than the ownership of the gore of land in controversy; and this is more especially insisted on because the jury found only one dollar damages. The finding of the jury "for the plaintiffs" was upon all the issues in the pleadings, and, as we have shown, the only issue upon any material fact was as to the ownership and possession of this particular strip of land, and this verdict was clearly against the defendants upon that matter. As to the amount of damages found by the verdict, it was entirely immaterial and surplusage. There was no issue upon the question of damages presented by the pleadings for the jury to try, and that

part of their verdict was, therefore, upon a matter not properly before them. The answer not containing any specific denial of the amount of damages alleged in the complaint, those allegations were therefore admitted, and there was no issue upon that question. We have no right to say that the jury founded their verdict upon matters not in issue. So with regard to the instruction of the Court that, if the jury should find that the plaintiffs were entitled to the mining ground they must find a verdict for $1,000 damages upon the admissions of the answer. That instruction was upon an irrelevant and immaterial matter, one not for the jury to act upon. The amount of damages being admitted by the answer took that question entirely from the jury. Because the jury did not bring in a verdict for $1,000 damages, in accordance with that instruction of the Court, we are not therefore to conclude that they did not find that the plaintiffs were entitled to the mining ground in dispute, in direct contradiction to their verdict.

The question before us is not as to the conclusiveness or effect of this verdict upon the issues presented by the pleadings, or the judgment which may be rendered upon the verdict, as an estoppel or bar in another action, but simply what relief, or what kind of a judgment the plaintiffs are entitled to under the pleadings and verdict; whether they are entitled to such relief as will quiet and settle the controversy about this mining ground, or whether they shall be compelled to bring repeated suits for each trespass which may be committed by the defendants. We are clearly of opinion that under the pleadings and verdict they are entitled to the relief by perpetual injunction, as prayed for in the plaintiffs' complaint.

It is also urged that the form of the action is to govern in questions of this kind. We are aware that under the old system of practice the conclusiveness and effect of general verdicts, and the judgments rendered thereon, depended very much upon the particular *form* of the action. But our Practice Act abolishes all these *forms*, and provides that " there shall be in this State but one form of civil actions for the enforcement or protection of private rights, and the redress or prevention of private wrongs." And the pleadings are merely required to set forth a statement of the facts constituting the cause of action or defense " in ordinary

and concise language." It has become a common practice to follow and use, to some extent, the form of allegation of facts formerly used in the different kinds of actions under the old system; but such use cannot vary the uniform rule which must be applied to all pleadings under the new code. We must now look solely to the material facts put in issue by the pleadings, to ascertain what was in fact determined by the findings of the Court or the verdict of the jury. The mere fact that the pleader has used terms of expression in stating his case used in particular kinds of action, under the old system of practice, will not necessarily give character to or determine the effect or meaning of the verdict. It is therefore unnecessary to investigate this question by an examination of the cases founded upon these old distinctions of the different forms of actions.

The orders appealed from are therefore reversed and the Court below is directed to enter judgment for a perpetual injunction, in accordance with this opinion.