STATE BANK OF NEBRASKA, PLAINTIFF IN ERROR, V. JOHN H. GREEN, DEFENDANT IN ERROR.

1. **Sale of Real Property Under Execution where Stay Bond has been Filed.** The purchaser of real property, at a sale under an execution issued while an efficient supersedeas bond is on file, staying proceedings under the judgment or order awarding it, acquires no rights as against the owner. And where such a sale is set aside, as it should be, on motion, it is the duty of the court, so far as possible, by summary orders, to place all parties in *statu quo*.

2. ———. While the doctrine that all rights acquired under a judicial sale, made while the judgment is in force, should be protected, is fully recognized, yet it must be understood that this doctrine is properly applicable "only when the power to make the sale is clearly given."

3. ———. Under our law governing sales of real property on execution the title of the purchaser depends entirely upon the sale being finally confirmed; and until this is done the rights of the execution debtor are not certainly divested.

4. ———: INNOCENT PURCHASER. An averment, "that on or about the fifth day of February, 1879, the plaintiff in the above entitled action sold to one Thos. H. Lee the premises described in the petition in said action, for a valuable consideration," is not sufficient to show Lee to have been a *bona fide* purchaser.

5. ———: INTEREST ON PURCHASE MONEY REFUNDED. The allowance of interest on money ordered refunded to the purchaser, at an execution sale subsequently set aside, for the time it was in the hands of the judgment creditor, is not made as a statutory right, but rather as an equitable adjustment of damages presumed to have been sustained by being deprived of the use of the money.

THIS is a petition in error brought to reverse an order of the district court for Washington county, made November 26, 1879, in an action brought to foreclose a mortgage made by John H. Green, in which the State Bank of Nebraska was plaintiff and John H. Green and John I. Redick were defendants.

The action was commenced on the twenty-sixth day of April, 1876, and was brought to foreclose a mortgage made by the defendant Green to secure a note made by him to Redick, and by Redick indorsed to the plaintiff. A decree was rendered in the action on the twenty-ninth day of November, 1876. An order of sale issued upon the decree, and the mortgaged premises were sold to the plaintiff, and on the sixth day of December, 1877, an order was made confirming the sale of the mortgaged premises, and awarding execution for the deficiency of $9944.73. On the fifteenth day of December, 1877, the defendant Green filed a bond on appeal to supersede the execution of the order confirming the sale of the mortgaged property and awarding execution for deficiency, but no further proceedings on appeal from that order were taken.— On the first day of March, 1878, under a stipulation signed by attorneys for Green, an execution was issued to Douglas county, based upon the order confirming the sale of the mortgaged property and awarding execution for deficiency, under which execution property of Green in Douglas county was levied upon but not sold. Subsequently, and on the seventh day of October, 1878, by virtue of an order of sale based on the execution for the deficiency, issued March 1, 1878, property of Green in Douglas county, levied on under the execution, was sold by the sheriff of Douglas county to divers persons, and among them John I. Redick and Meyer Hellman, who paid the purchase money to the sheriff. On the sixth day of November,

1878, the sales of Green's property, in Douglas county, made October 7, 1878, were confirmed by the judge of the court, and deeds ordered to be made to the several purchasers, and thereupon and on the same day the sheriff paid to the plaintiff the sum of $7897.15, being the amount received by him from the purchasers at the sale of October 7, 1878, less fees which had accrued to him in the case.    On the fifteenth day of November, 1878, the defendant Green filed a bond on appeal to supersede the order confirming the sales made in Douglas county on the seventh of October, 1878, and duly perfected his appeal from that order, and on the hearing of that appeal in the supreme court that order was reversed.    See 8 Neb., 297.    On the fourth day of December, 1878, the defendant Green filed his petition in error in the supreme court to reverse the order made December 6, 1877, confirming the sale of the mortgaged property and awarding execution for deficiency, and at the July term of this court in 1879 the order confirming the sale of the mortgaged property and awarding execution for deficiency was reversed—9 Neb., 165.    On the sixth day of February, 1879, the plaintiff sold the mortgaged property to one Thomas H. Lee.    On the twenty-sixth day of November, 1879, the order was made, to reverse which this petition in error is filed by the plaintiff, which order sets aside all sales made in the case, all executions and orders of sale issued in the case; directs that possession of the mortgaged property be given to Green, and that a writ issue to put Green in possession of it, and orders the plaintiff to refund to Redick, as well as to all the other purchasers of the Douglas county property, the money they paid upon their several purchases, and enjoins the plaintiff from proceeding further in the case until the order is complied with.    Defendant

Redick filed a cross petition in error seeking a modification of the order below, so as to require plaintiff to pay interest on the purchase money at the rate of ten per cent per annum instead of seven.

*George E. Pritchett*, for plaintiff in error, cited Gen. Stat., sec. 508, p. 612.  *McAusland v. Pundt*, 1 Neb., 211.  *Gray v. Brignardello*, 1 Wall., 634.  *Reardon v. Learcy*, 2 Bibb., 202.  *Doe v. Swiggett*, 5 Blackf., 328. *South Fork Canal Co. v. Gordon*, 2 Abb. (U. S.), 479. *Loring v. Illsley,* 1 Cal., 24.  *Goodwin v. Mix*, 38 Ill., 115.  Rorer on Judicial Sales, sec. 1145.  *Hawkins v. Miller*, 26 Ind., 173.  *Leller v. Lingerman*, 24 Ind., 264.  *McGhee v. Ellis*, 4 Littell, 245.  *Reed v. Crosthwaite*, 6 Iowa, 220.  *Dunn v. Frazier*, 8 Blackf., 432. *Pennington v. Clifton*, 10 Ind., 172.  *Richmond v. Marston*, 15 Ind., 134.

*Albert Swartzlander*, for defendant in error, Redick, cited *Bicket v. Garner*, 31 Ohio State, 28.  *Gray v. Smith*, 36 N. H., 436.  *Brittin v. Phillips*, 24 How. Prac., 112.  *Miller v. Hall*, 1 Bush, 230.  *Requa · v. Rea*, 2 Paige Ch., 339.  *Leland v. Smith*, 3 Daly, 309. *Salter v. Dunn*, 1 Bush, 311.  *Earls Lessee v. Shoulder*, 6 Ohio, 410.  *White v. Lyons*, 42 Cal., 279.

LAKE, J.

In the case of *State Bank v. Green*, 8 Neb., 297, this court held that the deficiency execution now in controversy, under which Green's property in Douglas county was seized and sold, was issued without authority of law, there being on file at the time of its issue an efficient supersedeas bond staying proceedings under the order of the court awarding it.   The effect of that decision was to declare invalid the execution and all that was done under it.   The purchasers of

that property, therefore, acquired no rights as against Green, and the district court, under the mandate of this court, very properly did what it could, by summary orders, to place all parties in *statu quo.*

This case is not that of a formal sale on execution under a judgment or order of the court, not superseded, and to which the authorities cited by counsel for the plaintiff would be entirely applicable, but it is one wherein the process of the court, having been unjustifiably employed, resulted in an injury, for which it was the duty of the court, so far as. possible, to cause reparation to be made. In this we do not fail to recognize the doctrine that all rights acquired under a judicial sale, made while the judgment is in force, should be protected, yet it must be understood that this doctrine is properly applicable " only when the power to make the sale is clearly given." *Gray v. Brignardello,* 1 Wall., 627.

In all of the cases of sale under execution, cited on behalf of the plaintiff, the authority to make them was unquestioned, the point decided being that the subsequent reversal of the judgment under which the execution issued did not defeat the title acquired by the purchaser at the sale. *Loring v. Illsley,* 1 Cal., 24. *Doe v. Swiggett,* 5 Blackf., 328. *McJilton v. Love,* 13 Ill., 486. But the rule of these and like cases has no application where the sale itself was without authority, and is subsequently set aside for that reason. There is necessarily a very wide distinction between the reversal of the judgment and the setting aside of the sale of property on execution under it, in the effect produced upon both purchasers and parties. *McBain v. McBain,* 15 Ohio State, 337. Under our law governing sales of real property on execution the title of the purchaser depends entirely upon the sale being finally confirmed by the court under whose

process it was made, and until this is done the rights of the execution debtor are not certainly divested. *Miller v. Hall*, 1 Bush (Ky.), 230. And what we have said of the necessity of a confirmation to divest the owner of real estate of his title is applicable to the sale of the mill property in Washington county under the mortgage. This sale appears to have been made October 13, 1877; and a formal order of confirmation was entered on the sixth of December following, to which Green duly excepted, and on the fifteenth of the same month filed an approved supersedeas bond, with the view ostensibly of bringing the question of its correctness to this court by appeal.

The appeal, however, was never perfected, but within one year from the entry of the order Green brought it here by proceedings in error, which resulted in a reversal of the order of confirmation—not because the sale was found to have been illegally made, but because of a certain condition embodied in the order which led this court to the inference that the sale was not entirely satisfactory to the judge of that court. *Green v. State Bank*, 9 Neb., 165. And it now appears that this inference was justifiable from the fact that, in the subsequent proceeding under the mandate from this court, the sale has been set aside. This done, as we have before shown, it was the duty of the court, so far as it could do so, by proper orders to place the parties in the situation in which they were before the sale was made.

One of the objections—indeed the principal one—to the order restoring to Green the property sold under the decree of foreclosure is, that the plaintiff, who was the buyer, has since conveyed it to one Lee, who, it is claimed, is an innocent purchaser. It is unnecessary here to decide whether, under the circumstances of this case, it were possible for Lee to have been an in-

nocent purchaser, and as such to have acquired rights respecting the property superior to those of the plaintiff. No such question is presented in the record, and we must treat the case as one concerning the plaintiff and Green alone.

It is not shown that a conveyance of the premises was ever made to the plaintiff by the sheriff, nor indeed could there have been, legally, during the life of the supersedeas bond, filed on the fifteenth of December, 1877. And all we have tending to show such sale by the plaintiff to Lee is an affidavit of the attorney of record, remarkable only for its brevity, and containing this solitary averment, viz.: "That on or about the fifth day of February, 1879, the plaintiff in the above entitled action sold to one Thos. H. Lee the premises described in the petition in said action, for a valuable consideration." This falls far short of placing Lee in the attitude of an innocent purchaser, even conceding it were possible, in view of all the facts concerning the title, for him to have occupied it. Not a word is said as to the amount or time of payment of the alleged "valuable consideration," which, whatever it may have been, for aught that appears, was paid or promised with full knowledge of Green's rights in the property, and that the plaintiff's pretended title was liable to be defeated by reason of the sale, through which it was derived, being finally set aside. This objection, therefore, is entitled to no weight in the decision of the case, even if we thought it might possibly have been made available by a full statement of all the facts and circumstances of the sale. There being no error in the several matters complained of by the plaintiff, the rulings thereon must be affirmed.

There is, however, still another question to be noticed, raised by the cross-petition in error of the de-

fendant Redick, concerning the rate of interest allowed by the district court on the several sums of money ordered to be returned to the defendants. The court allowed *seven* per cent, the ordinary legal rate at the date of the order, for money withheld unjustly; but it is contended that it should have been *ten*, the legal rate when the plaintiff received it, at least up to the first day of June, 1879, when our present law of seven per cent took effect.

The allowance of interest for the use of money held as this was is not secured to a party as a statutory right, but is made rather in the discretion of the court as an equitable adjustment of the damages presumed to have been sustained by one thus deprived of the use of his money through no fault of his own. In the absence of an agreement, either express or implied, the statute gives interest only where the money has been " retained without the owner's consent." Session Laws 1879, p. 114, Sec. 4.

While it would be improper, in any event, to allow to a purchaser for the use of money so returned to him an amount exceeding the prevailing legal interest, yet the circumstances might be such as not to justify that much, or even to require no allowance at all. In this case we see nothing indicative of an unwise excercise of discretion in fixing the amount, and the ruling of the court in this particular also is sustained.

AFFIRMED.