YOUNG v. DE PUTRON. SAME v. LEIGHTON *et al.* SAME v. LINCOLN DRIVING PARK ASS'N.

(*Circuit Court, D. Nebraska.* December 17, 1888.)

1. EXECUTION—SALE—RIGHTS OF PURCHASER.
   In Nebraska, the title of a purchaser at execution sale is not complete until confirmation of the sale by the court, and where the confirmation, after being entered, is at the same term set aside, before a transfer of the property by the purchaser, his vendees acquire no title.

2. PRINCIPAL AND AGENT—POWER OF ATTORNEY—EXECUTION—TRIAL—JUDGMENT ON FINDINGS.
   In entering judgment upon special findings of a jury, where it appears that an attorney in fact four years after his appointment had fraudulently conveyed his principal's land, worth $70,000, for $1,000, it will be assumed, under a finding that the power of attorney was executed to enable the appointee "to make conveyances to purchasers when sales were made by" persons named, who had contracted to plat and sell the land, "and to facilitate their operations under their contract," that the facts stated in the finding appeared upon the face of the power of attorney, and, the sale not having been made by the persons named, no title passed to the fraudulent grantee which could be recognized even at law.

3. TAXATION—TAX TITLE—DEED—SEAL.
   In Nebraska, tax deeds not sealed by the county treasurer with his official seal are void, and no title is acquired thereunder where the jury have found that the possession during the statutory period was not "open, notorious, exclusive, and adverse," but "mixed."

At Law. Motion for judgment upon special findings of fact.

*R. S. Hall* and *J. R. Webster*, for plaintiffs.

*Lamb, Ricketts & Wilson* and *Harwood, Ames & Kelly*, for defendants.

BREWER, J. Complainant's chain of title is brief, direct, and clear, as follows: A patent from the United States, December 16, 1862, to Jane Y. Irwin; a deed, August 9, 1867, from her to William P. Young; a reconveyance, February 5, 1874, from Young to Irwin; a deed, June 11, 1884, to complainant. As against this chain of title defendants present three claims: First, a judicial sale. On May 19, 1877, a judgment was rendered in the district court of Lancaster county against Jane Y. Irwin. Execution was issued, and sale made October 2, 1877, to E. J. Curson. October 10th an order of confirmation was entered, which, at the same term, and on November 3d, was set aside. Curson took this order setting aside the confirmation to the supreme court for review, but it was affirmed. *Sessions* v. *Irwin*, 8 Neb. 5. After the order of confir-

mation had been set aside, Curson made a deed, and from that springs one of the titles upon which defendants rely. It is the settled law of Nebraska that the title of a purchaser at an execution sale depends not alone upon his bid or payment of the purchase money, but upon the confirmation of the sale; also that one purchasing at an execution sale submits himself to the jurisdiction of the court as to matters affecting that sale, and that a court has power during the term to vacate or modify its own orders, or to rescind decrees. *Phillips* **v.** *Dawley*, 1 Neb. 320; *Bank* v. *Green*, 10 Neb. 134, 4 N. W. Rep. 942; *Volland* v. *Wilcox*, 17 Neb. 50, 22 N. W. Rep. 71; *Gregory* v. *Tingley*, 18 Neb. 322, 25 N. W. Rep. 88. It follows from these facts and decisions that the sale, though temporarily confirmed, was finally set aside, and that no rights of a third party accrued during the time that the sale was apparently confirmed. Hence this chain of title presented by defendants must fail.

A second chain of title is under a conveyance made by an attorney in fact. On the 31st day of March, 1874, Jane Y. Irwin entered into a contract with Scott, Boyd & La Master, for the platting and sale of the land. They entered upon the land soon thereafter, and surveyed and platted it. On the 24th of August, 1875, Jane Y. Irwin executed a power of attorney to William T. Donavan, to enable him to make conveyances to purchasers when sales were made by Scott, Boyd & La Master, and to facilitate their operations under their contract of March, 1874. On the 25th day of October, 1879, a deed was executed by Donavan, as attorney in fact, for the land to one John P. Lantz, who on the same day conveyed it to Samuel W. Little. At the time of these conveyances the land was worth $70,000, and the conveyances were made for $1,000. Within a month thereafter a revocation of the power of attorney given to Donavan was placed on record, and the conveyances by the attorneys in fact to Lantz, and by Lantz to Little, were made with the intention of defrauding Jane Y. Irwin; and the revocation of the power of attorney was known to the subsequent purchasers, as well as all the facts stated therein, prior to their purchases. Obviously the plaintiff's land cannot be taken away by any such transactions as these. When one holding a power of attorney, which has been lying dormant for over four years, conspires with a third party to make a conveyance in the name of his principal of land worth $70,000 for $1,000, and immediately a revocation of that power of attorney is placed upon the record, clearly the first purchaser acquires no rights, and subsequent purchasers, taking with knowledge, are in no better condition. But it is earnestly insisted by defendants that these conveyances transferred the legal title, and that whatever rights plaintiff may have can be established only in a court of equity, and that, upon the facts as found, judgment must go for defendants. They also insist that on a motion for judgment upon special findings inquiry is limited to the facts stated in the findings, and that the court may not examine the testimony for further facts; and upon this say that the power of attorney is not disclosed in the findings, nor the revocation thereof; hence the court has no information as to the terms, limitations, or language of either of these instruments. It may be that

the plaintiff's remedy is in a court of equity, and in view of the fact that the defendants have paid the taxes for so many years it is obvious that full protection to the rights of all the parties can be most successfully secured in a court of equity. It may be also that upon this motion I am limited narrowly to a consideration of the facts stated in the findings. Assuming that to be true, it appears from the fourth finding that the power of attorney to Donavan was made "to enable him to make conveyances to purchasers when sales were made by Scott, Boyd & La Master, and to facilitate their operations under their contract of March 31, 1874." It is not clear from this finding whether the jury mean to affirm that this purpose was expressed on the face of the power of attorney, or only that that was the purpose of the parties in executing the instrument. As the defendants are building up their title, and are insisting upon a strict adherence to the facts stated in the findings, it seems to me that I am justified in assuming that this finding shows that such a purpose was expressed on the face of the power of attorney. It is not shown by any finding that Scott, Boyd & La Master ever made the sale, or had anything to do with the sale to Lantz. Nor is it shown that the conveyance upon its face purported to be in consummation of a sale made by those gentlemen. For aught that appears, the power of attorney and the deed taken together may have disclosed both the purpose for which the power of attorney was executed—which of course operated as a limitation on the power—and a breach of trust in the conveyance. It is true that the meagerness of these findings leaves the matter in considerable doubt; but in view of the grievous wrong attempted to be consummated by these transactions, as shown by the findings of the jury, I am constrained to hold against the defendants on this chain of title also, even in this law action.

The remaining chain of title is under certain tax deeds. There were two of these—one for the taxes of the year 1867, and dated on June 12, 1871; and one for those of 1868, dated December 15, 1871. There was no assessment of the land in controversy in the year 1867, nor was the same placed upon the tax-list of that year. Neither deed was sealed by the county treasurer with his official seal, nor did the county treasurer have an official seal. Under the decisions of the supreme court of Nebraska such tax deeds are void. *Sutton* v. *Stone*, 4 Neb. 323; *Reed* v. *Merriam*, 15 Neb. 325, 18 N. W. Rep. 137; *Hendrix* v. *Boggs*, 15 Neb. 472, 20 N. W. Rep. 28; *Sullivan* v. *Merriam*, 16 Neb. 160, 20 N. W. Rep. 118; *Seaman* v. *Thompson*, 16 Neb. 548, 20 N. W. Rep. 857; *Shelley* v. *Towle*, 16 Neb. 195, 20 N. W. Rep. 251; *Baldwin* v. *Merriam*, 16 Neb. 200, 20 N. W. Rep. 250. Nor were these deeds coupled with an exclusive and actual adverse possession for 10 years. The language of all the separate findings upon a matter of possession affirms only a mixed possession. The jury having in the original verdict, prepared by counsel and handed to them for their consideration, stricken out such adjectives as "actual, undisputed, exclusive, open, notorious, and adverse," and inserted in lieu thereof the word "mixed," plainly, as I think, indicate thereby their finding that the possession was always a matter of

dispute. Under these circumstances, the deeds being void on their face, and not coupled with 10 years' open, notorious, exclusive, and adverse possession, this defense also must fail. These being the only questions, judgment will be entered for plaintiff. And the case of *Rowena Young* v. *Harriet Leighton et al.*, and the case of *Rowena Young* v. *The Lincoln Driving Park Association*, are like this, and the same judgment must be entered.