[Sac. Nos. 1105, 1204. Department Two.—March 22, 1905.]

GEORGE J. REINER, Respondent, v. HENRY C. SCHROE-
DER, Appellant.

ACTION TO QUIET TITLE—POSSESSION OF OWNER NOT ESSENTIAL.—Notwithstanding a former different rule, it is not now necessary that the owner of land should be in possession thereof to enable him to maintain an action to quiet title.

ID.—DETERMINING NATURE OF ACTION—PLEADINGS—ISSUES—TRIAL—JUDGMENT—INJUNCTION.—The nature of the action must be determined by the issues as made by the pleadings and submitted to the

jury. Where the complaint distinctly alleged plaintiff's ownership and right of possession, and an ouster by defendant, and prayed judgment that plaintiff is the owner of the property, and that defendant has no interest therein, and that he be restrained from interfering therewith, the fact that plaintiff did not allege specifically that defendant claimed some interest therein, and call upon him to set it forth, as usual in an action to quiet title, does not disprove the nature of the action, the defendant having met the complaint by a denial of plaintiff's ownership and an assertion of title in himself. Where the issues thus formed were tried by jury and decided in plaintiff's favor, the court properly gave judgment accordingly, and the injunction included therein was authorized.

ID.—CLAIM FOR DAMAGES—DISREGARD BY JURY—ISSUE AS TO OWNERSHIP NOT AFFECTED.—The fact that a claim for damages was made in the complaint cannot affect the result of the trial of the issue of ownership, especially where such claim was ignored by the jury, and no damages were awarded other than a nominal sum of one dollar.

ID.—SUPPORT OF VERDICT—OWNERSHIP OF MINING CLAIM—CONFLICTING EVIDENCE.—Where the location and ownership of a mining claim was in controversy, and the evidence was substantially conflicting, and the jury manifestly disbelieved the defendant's evidence and accepted that given by the plaintiff as to the priority of location and ownership, their verdict in his favor will not be disturbed.

ID.—INJUNCTION—INJURY TO MINING CLAIM—DAMAGE IMMATERIAL.— —Where the court upon sufficient evidence recited in its decree enjoining the defendant that the land was mining land, chiefly valuable for its minerals, and that defendant took possession and ousted the plaintiff, and made excavations and removed gold-bearing earth and minerals, and that his acts unless restrained would cause plaintiff irreparable injury, the defendant cannot escape the consequences of his unauthorized acts, on the ground that the ore mined by him was left in the tunnel or on the dump, and would benefit the plaintiff. No damages having been awarded, the question of damage is immaterial. The severing of the ores from the mine was an injury to the plaintiff's freehold, and he was properly restrained from interfering therewith.

ID.—JURY TRIAL—FINDINGS.—It is only in cases solely of equitable cognizance in which the general verdict of a jury will not support a judgment; but where the plaintiff has been ousted from possession, and the question of ownership is in issue, the parties are entitled to a jury trial upon that issue, and their general verdict thereupon is conclusive upon the court, and no findings are required thereupon.

ID.—INJUNCTION—ANCILLARY REMEDY—FACTS PROPERLY RECITED IN DECREE.—The injunction was an ancillary remedy, depending upon the question of ownership; and it was sufficient for the court to find

in its decree and recite therein the facts sufficient to warrant the injunction, and it was not necessary that they should appear in findings separate from the decree.

APPEALS from a judgment of the Superior Court of Siskiyou County and from an order denying a new trial. John F. Ellison, Judge presiding.

The facts are stated in the opinion.

C. H. Lindley, H. R. Raynes, and John H. Magoffey, for Appellant.

R. S. Taylor, and Gillis & Tapscott, for Respondent.

CHIPMAN, C.—There are two appeals in this case, taken by defendant at different times on separate transcripts,— Sac. No. 1105, an appeal from the judgment on the judgment-roll, and Sac. No. 1204, an appeal from the order denying plaintiff's motion for a new trial. Both appeals will be disposed of in this opinion.

*Appeal from the judgment.* Plaintiff alleges in his complaint: 1. "That he is now and ever since July 1st, 1899, has been the owner and entitled to the possession of certain real estate, described as 'Schroeder Consolidated Quartz Mining Claim,' consisting of the 'Mountain Boy,' 'Gold Medal,' 'Wah Up,' 'Rosalie' and the 'Windsor' lode claims and also that 'Mammoth' mine and the 'Snow Flake' mine, particularly described in the complaint; 2, that all of said property is mining land and valuable for its gold-bearing rock and earth; 3, that about November 3, 1900, defendant took forcible possession of that portion of said mining lands described as the 'Mammoth' mine and the 'Snow Flake' mine, and ousted and dispossessed plaintiff thereform and put up stakes around said lands, and recorded a mining location in the mining records of Sisikiyou County, in his own name, under the name of the 'Enterprise' mine, describing the location; 4, that all of said mining land first above described constituted a group of mining claims, and the same were worked together as one mine by plaintiff herein; 5, that plaintiff was at the time deriving large profits from the part of said mine so taken as

aforesaid from his possession, to wit—a profit of $50 per day; that there was exposed and available sufficient ore at said place to run said mill for a period of at least one year and that by reason of said acts of defendant plaintiff has been deprived of the opportunity to mill said ore to his damage of $18,250.'' There is a second cause of action consisting of the allegations set forth above, except the last, marked 5. It is further alleged that plaintiff purchased said mine to make a sale thereof, and that he received many offers for the same since defendant's said acts, but that by reason thereof he has been prevented from making any sale to his damage of twenty thousand dollars; that defendant has been extracting and removing valuable ores and minerals from the said portion of the said mines so held by him, and though notified and requested to desist from so doing still continues to extract and remove the same; that said acts of defendant, if continued, will cause plaintiff irreparable damage and injury and render said property valueless.

Plaintiff prays that he be adjudged to be the owner of said property, and that defendant has no right therein: that defendant be restrained from interfering with the same, or any part thereof; and for damages in the sum of $38,250, ''and for such other or further relief as may be agreeable to equity.''

In his answer defendant denies plaintiff's ownership or right of possession of said Schroeder mine, or of any of said mining claims embraced therein. As to the said Mammoth mine, defendant denies plaintiff's ownership and right of possession, and alleges that the boundaries of said mine are coincident with the boundaries of said Rosalie quartz mine, which was prior in point of time to said Mammoth, and that the said Schroeder Consolidated mine was patented March 2, 1898, and embraced all of said Mammoth location, and whatever title plaintiff has to the said Mammoth mine was merged in said Schroeder Consolidated mine.

As to the said Snow Flake mine, claimed by plaintiff, it is alleged by defendant that, for reasons set forth, the location thereof by plaintiff's grantor was not made in conformity to the laws of the United States, and was therefore void, and that prior thereto defendant made a legal and valid location thereof under the name of the Mountain Treasure and entered into immediate possession thereof, became and is now the

owner and entitled to the exclusive possession. Defendant denies that he entered upon or took possession of the premises mentioned in the complaint as the Mammoth mine, or entered as alleged upon any of the ground described in the complaint except in and upon the said Mountain Treasure mine. Defendant then alleges that he, by a mistake of law, failed to record the notice of his location of said Mountain Treasure mine, and that he thereafter, to wit, November 5, 1900, relocated said ground under the name of the Enterprise mine and duly recorded his notice of location prior to the recording of the location of said Snow Flake claim by plaintiff's predecessor, and that defendant is the owner and entitled to possession of said ground by virtue of his said locations of the said Mountain Treasure and Enterprise mines. Defendant denies specifically the allegations of damage and the alleged particular acts of trespass, and as a separate defense alleges that on January 18, 1901, plaintiff entered into a written contract with defendant to purchase said Mountain Treasure or Enterprise mine, and is estopped from asserting ownership to the land embraced therein. This defense, however, is not urged in plaintiff's brief. Defendant's prayer is, that plaintiff take nothing by his action for costs and "for such other relief as may seem meet and equitable." The point urged by defendant is that "an action of this character cannot be maintained" where there has been "a complete ouster of plaintiff and defendant is in actual adverse possession of the land in dispute at the commencement of the action." (Citing *Raffeto* v. *Fiori,* 50 Cal. 364; *Heilbron* v. *Heinlen,* 72 Cal. 374.) To the point that the decree adjudging the plaintiff to be the owner and entitled to the possession of the land was erroneous and should be stricken out, defendant cites *Berry* v. *Ivanice,* 53 Cal. 653.

It appears that the cause was tried on the complaint and answer, the issues were submitted to a jury, and a general verdict returned in favor of plaintiff with "nominal damages assessed at $1."

The cases cited seem to hold to the technical common-law rule as claimed by defendant, in actions for trespass, *quare clausum fregit,* (see *Heilbron* v. *Heinlen,* 72 Cal. 653,) that plaintiff must prove,—1. Possession at the time of the injury, and this rightly against defendant; and 2. That the injury

was committed with force by defendant. We must judge of the case before us by the issues as made by the pleadings and as submitted to the jury. Plaintiff is entitled to any relief where there is an answer, that is "consistent with the case made by the complaint and within the issue." (Code Civ. Proc., sec. 580.) Plaintiff distinctly claimed ownership and right of possession and prayed that he be adjudged to be such owner. It is true that he did not, as is usual in complaints to quiet title, allege that defendant claimed some interest in the land, nor did he call upon defendant to set forth his title, but defendant met the complaint by a denial of plaintiff's ownership and an assertion of title in himself, and the issues thus formed were tried and by the general verdict were decided in plaintiff's favor and the court properly gave judgment accordingly. The fact that a claim for damages was made in the complaint cannot affect the result of the trial of the issue of ownership, especially as such claim was ignored by the jury and no damages were awarded. We do not think the cases cited by defendant are applicable. *McLaughlin* v. *Kelly,* 22 Cal. 211, more nearly illustrates the principles governing the present case. (See, also, *Haggin* v. *Kelly,* 136 Cal. 481.) It is not now necessary that the owner of land should be in possession in order to enable him to maintain an action to quiet title. (*Casey* v. *Leggett,* 125 Cal. 672. See, also, *Landregan* v. *Peppin,* 94 Cal. 465.) The judgment, in our opinion, was proper, and the injunction was authorized.

*Appeal from the order.* Appellant contends that the evidence is insufficient to support the verdict and judgment. In this group of mines the five first named in the complaint are patented and the boundaries undisputed. These five claims and the Mammoth were purchased by plaintiff from defendant. The general direction of the claims was northeast and southwest, the Wah Up being the most westerly claim; the Rosalie adjoining on its easterly side, but extending about three hundred and fifty feet further southerly. In the angle thus formed by these two claims, southerly from the Wah Up and westerly from the southerly end of the Rosalie, is the ground in dispute. This ground was being worked by plaintiff in the spring of 1900 under the impression that the tunnel in which he was working was covered by the Mammoth loca-

tion, and there is evidence that while so engaged defendant stated to witness McLean, plaintiff's superintendent in charge, that it was Mammoth ground, and also for some distance beyond the workings and belonged to plaintiff. Defendant was present and knew that this work was progressing, and knew that much valuable ore was being taken out, but made no claim to the ground. While taking out ore from the lode and being ignorant of the exact location of the Mammoth lines, McLean became fearful that the pay ore was getting outside of the Mammoth boundaries, and he therefore, on April 15, 1900, located, for the benefit of plaintiff, what is called the Snow Flake, the east end of the claim abutting on the southeasterly side of the Rosalie. His purpose was to include whatever of the ledge might be found to·be outside the lines of the Mammoth when ascertained. There was evidence tending to show that the ground taken in by the Snow Flake was ground which defendant had represented to belong to plaintiff. Defendant's contention is, that the Mammoth location was substantially the same as the patented Rosalie; that the ground in dispute was outside the Mammoth boundaries, and that he located it as the Mountain Treasure in April, 1899, and relocated it in November, 1900, as the Enterprise; that when the Snow Flake was located, in April, 1900, it was not the subject of location because of defendant's prior said location. The controverted fact in the case relates to the ownership of this ground. The evidence is conflicting in many essential particulars. Defendant's evidence tended to show that the disputed ground was outside the boundaries of the Mammoth; that he made the alleged location of the Mountain Treasure in 1899, but having failed to record his notice he relocated the ground as the Enterprise in November, 1900. There was evidence, however, tending to show that his alleged location of the Mountain Treasure was a fiction, and was put forward in order to defeat the Snow Flake location so as to give validity to the subsequent Enterprise location. Shortly after the location of the Snow Flake, McLean met defendant. McLean testified: "I told him I had located a claim there and did n't want to record it until I had seen him. I told him where I had located it and . . . asked him 'does the property, the rest of the property or ground belong to the company,' and he said 'yes, it belonged to them clear up

on the hill,' and I said 'that is the reason I did n't record the claim, I did n't want to record it until I had seen you.' He said it was not necessary. That all the ground there belonged to the company.'' McLean testified that he could find no stakes around the claim or evidence of any prior location, and defendant said nothing at that time about any prior location by him. It was not until the following November, when defendant took possession under the Enterprise location, that he claimed the property so far as McLean knew. The jury manifestly disbelieved defendant's evidence and accepted plaintiff's, and with their conclusion we cannot interfere.

Defendant claims that McLean's location was invalid, because, as is contended, the evidence shows that his discovery of ore was made while he was working in the Mammoth mine; that the same discovery cannot be used for two locations; nor can a location be based upon a discovery made within the limits of another existing and valid location. (Citing Lindley on Mines, sec. 337; *Belk* v. *Meagher,* 104 U. S. 279; *Reynolds* v. *Pascoe,* 24 Utah, 219.) The evidence as to McLean's discovery was not confined to what he found in the supposed limits of the Mammoth mine. He testified to having found quartz at different points on the ledge outside of the tunnel in which he was mining and on ground not now claimed by defendant to have been in the Mammoth location. Furthermore, if the ground where McLean was mining ore was on the Mammoth, defendant could not consistently urge his Enterprise location to defeat McLean's location which covered the same ground, for, as we understand the evidence, defendant's point of alleged discovery was in plaintiff's working tunnel. Indeed, it is fairly inferable from the evidence that it was upon information given by McLean to defendant as to the results of his mining in this tunnel and of his having located the ground that defendant afterwards made the Enterprise location. Defendant's contention that the Mammoth did not vary enough from the Rosalie to include the point where plaintiff was mining rests upon conflicting evidence. But conceding the fact, it cannot avail defendant, because the ground, if not in the Mammoth, was included in the Snow Flake, and the question presented to the jury was, Is the Snow Flake title superior to that of the Enterprise?—and the verdict was for the Snow Flake.

The court recited in the decree that the land was mining land and chiefly valuable for its minerals, and that on November 3, 1900, defendant with force unlawfully took possession of the mining ground described as the Mammoth and Snow Flake mines, ousted and dispossessed plaintiff, and since said date has made excavations thereon, ''and has removed from said mines the gold-bearing earth and minerals therein; that the acts of defendant unless restrained will cause plaintiff great and irreparable injury,'' etc.

Defendant contends that he took possession of no ground except his own; that there is no evidence that he removed from the mines any earth or minerals; that whatever ore he mined was left either in the tunnel or on the dump, and such acts, instead of causing plaintiff injury, would increase the value of his mines and put the ore in a position ready to be transported to plaintiff's mill. The decree has support in the evidence. Defendant cannot escape the consequences of his unauthorized acts by claiming that they resulted in plaintiff's benefit. In severing the ores there was injury to the freehold, and realty was converted into personalty. Whether defendant's acts resulted in actual damage is immaterial, except as the result might affect the amount of damages awarded (and in this case none were given); defendant had no right to interfere, as he was doing, with plaintiff's property, and he was properly restrained by the decree.

It is not necessary to consider the question of estoppel of defendant to which he refers in his brief. Plaintiff does not rely upon estoppel, although there was evidence tending, but perhaps insufficient, to establish it. The issue was squarely made between the relative priority of title under the two locations—the Snow Flake and the Enterprise—and was decided in favor of the former upon the validity of the locations themselves.

Defendant assigns several errors of law committed at the trial in ruling upon objections to testimony. Some of these rest upon defendant's view of the evidence, which is contrary to the verdict and findings of the court recited in the decree. Other objections were to the materiality of evidence, which it is apparent did no injury to defendant if conceded to be immaterial. Still others related to the question of damages, of which none were awarded, and the evidence, if immaterial,

was harmless. We do not deem it necessary to prolong the opinion by noticing these specifications in detail. We are satisfied that there was no prejudicial error in the rulings of the court.

Finally, it is contended that the findings do not support the judgment. There were no separate findings by the court, and findings were not waived. The court adopted the general verdict of the jury and based its judgment of plaintiff's ownership and right of possession thereon. In a separate decree, two days later, the court recited the verdict and referred to its judgment already made and set forth the facts above quoted as to the unlawful acts of defendant in taking possession and removing ores, etc., and adjudged that defendant be enjoined "from entering upon or interfering with any part of the lands of plaintiff described as follows" (describing the Mammoth and Snow Flake mines). The contention is, that the action was equitable in its nature,—whether considered as an action for trespass coupled with an injunction, or an action to quiet title coupled with an injunction to prevent further claims,—and that a general verdict of a jury will not support a judgment. (Citing *Warring* v. *Freear,* 64 Cal. 54; *Learned* v. *Castle,* 67 Cal. 41; *Bell* v. *Marsh,* 80 Cal. 411.) These were cases of equitable cognizance solely, and may be said to fall within the provisions of the last clause of section 592 of the Code of Civil Procedure. In the case of *Donahue* v. *Meister,* 88 Cal. 121,[1] it was decided that where a party was rightfully in possession, and was ousted by another, and wrongfully kept out of possession, upon the trial of those issues such party, whether defendant or plaintiff, is entitled to a jury trial. (See, also, *Newman* v. *Duane,* 89 Cal. 597.) In the present case plaintiff alleged ownership and right of possession, and that defendant wrongfully ousted him of such possession and wrongfully withholds possession. Defendant met those issues by denial, and by an assertion of title and right of possession in himself.

The code provides that where the action is "for the recovery of specific real or personal property, . . . an issue of fact must be tried by a jury, unless a jury trial is waived." . . . (Code Civ. Proc., sec. 592.) Plaintiff was, we think, clearly entitled as of right to a jury to try the issue of

---

[1] 22 Am. St. Rep. 283.

ownership; their general verdict was conclusive on the court, save only the power to set it aside and grant a new trial, and no finding of the court could add to or take from its force, and this question of ownership was the principal issue in the case. (See subject of right of jury discussed in *Hughes* v. *Dunlap*, 91 Cal. 385.) An injunction might or might not have been granted, and was but ancillary to the main issue. The ownership having been determined to be in plaintiff, and the court having so stated in the decree, there remained only to be found by the court facts sufficient to warrant the injunction. These facts appear in the decree, and it was not necessary that they should appear in findings separate from the decree.

The judgment and order should be affirmed.

Gray, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

McFarland, J., Lorigan, J., Henshaw, J.

Hearing in Bank denied.