[No. 10986. Department Two. May 26, 1913.]

TAXICAB MOTOR COMPANY, *Respondent*, v. PACIFIC COAST CASUALTY COMPANY, OF SAN FRANCISCO, CALIFORNIA, *Appellant*.[1]

INSURANCE — INDEMNITY — SATISFACTION OF JUDGMENT—PAYMENT BY NOTE—GOOD FAITH. The payment of a judgment by giving a promissory note for the amount due sufficiently shows "a loss actually sustained and paid in satisfaction of a final judgment" within the meaning of a clause in a policy of indemnity insurance, where there is nothing to show bad faith, and such settlement was approved by the probate court.

SAME—PAYMENT OF JUDGMENT—TIME FOR PAYMENT—APPEAL. A judgment paid within ninety days from the date of its affirmance by the supreme court is paid "within ninety days from the date" of final judgment "and after trial of the issue" within the meaning of a clause in a policy of indemnity insurance requiring such payment, by the assured; especially where the insurance company prosecuted the appeal under another clause in the policy granting it such right.

EVIDENCE — POLICY OF INDEMNITY—PAROL EVIDENCE—EXEMPTIONS. A policy of indemnity insurance given to protect a taxicab company from liability for accidents to any persons caused by its taxicabs, limiting the liability of the company in elaborate and minute details, cannot be added to by parol to exempt the company from liability in case the cars were driven in any city street in excess of the city speed limit, the policy containing no such exemption.

INSURANCE—INDEMNITY—VALIDITY—PUBLIC POLICY—VIOLATION OF STATUTE BY SERVANTS. A policy of indemnity insurance is not void as against public policy, in that it indemnifies against loss sustained in consequence of the violation of a statute fixing the speed

[1]Reported in 132 Pac. 393.

limit for automobiles; since it may indemnify against such acts committed by servants if not directed or participated in by the assured.

SAME—INDEMNITY—ACTIONS—DEFENSES—ASSUMPTION OF DEFENSE BY INSURER. An indemnity company after having assumed the defense of the action against the assured for wrongful death in which judgment went against the assured, cannot defend an action on the policy on the ground that the death was due to the malpractice of a physician, which would have been a defense and was not urged in the former action.

SAME — DEFENSES—FAILURE TO ASSIST IN DEFENSE — EVIDENCE— SUFFICIENCY. In an action on an indemnity policy, the defense that the assured did not render such co-operation and assistance in the defense of the action against it as the terms of the policy required, is not shown by the fact that an officer of the assured testified at an inquest and gave testimony which differed from his evidence at the trial, in the absence of anything to show that he wilfully testified falsely, or that his testimony was more than the result of a mistake; especially where it was not shown to have affected the verdict.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered October 29, 1912, upon findings in favor of the plaintiff, upon a policy of indemnity insurance. Affirmed.

*Samuel R. Stern*, for appellant.

*McCarthy & Edge, Nuzum, Clark & Nuzum*, and *Geo. H. Armitage*, for respondent.

FULLERTON, J.—The respondent, Taxicab Motor Company, owns and operates a number of taxicabs within the city of Spokane in which it carries passengers for hire. The appellant is an insurance company, making it a business to insure against losses from casualties resulting from the conduct of the various industries. On February 26, 1910, the appellant, for a premium of $625, issued to the respondent an insurance policy, insuring it for a period of one year "against loss or expense resulting from claims upon the assured for damages on account of bodily injuries, or death, accidentally suffered while this policy is in force by any person

or persons and caused by any of the" taxicabs operated by the respondent. The policy contained the following condition: "No action shall lie against the company for any loss under this policy, unless it shall be brought by the assured to reimburse him for loss actually sustained and paid by him in satisfaction of a final judgment, within ninety days from the date of such judgment and after trial of the issue." The policy also contained provisions requiring notice to be given the company of occurring accidents, and provided that, if any action be brought against the assured to enforce a claim for damages on account of any such accident, the service papers should be immediately forwarded to the company's office, or to its duly authorized local agent, and that the company would at its own cost defend such action.

On the night of May 17, 1910, while the policy was in force, an automobile of the respondent, while being driven by one of respondent's employees, ran against one Frank Burger, an employee of the city of Spokane in the performance of his duties, and inflicted bruises and wounds upon him from which he died a few days later. Due notice of the accident was given the appellant. Thereafter an action was begun by the administratrix of Burger's estate against the respondent to recover damages for his death, the administratrix alleging that the death was caused by the negligence of the driver of the automobile. The summons and complaint were forwarded to the appellant, and the appellant thereupon took upon itself the defense of the action, employing its own counsel, who assumed full charge of the defense. Judgment went against the respondent for the sum of $4,975, and the costs of the action. An appeal was taken to this court by the company, wherein the judgment was affirmed. *Burger v. Taxicab Motor Co.*, 66 Wash. 676, 120 Pac. 519. After the return of the remittitur in that case, the insurance company refused to satisfy the judgment, whereupon the respondent procured the satisfaction of the same by executing and delivering to the administratrix its promissory note for the

amount thereof with the accumulated interest; the settlement and satisfaction being made by the administratrix after she had presented the matter to the judge sitting in probate of her intestate's estate, and received his consent and approval.

The present action is an action by the taxicab company against the insurance company upon the bond. In its complaint the taxicab company set forth the facts substantially as we have related them, and demanded judgment in accordance with the terms of the policy. The insurance company, for answer to the complaint, put in issue certain of its allegations, and set up four separate affirmative defenses. In the first, it alleged that the note purported to have been given in satisfaction of the judgment was not given in good faith, but on the faith and understanding that the same should not be a liability against the taxicab company except in the event that the insurance company paid the judgment, and hence no damage or injury had resulted to the taxicab company by the judgment. For a second defense, it alleged that the policy was issued and accepted on the express understanding and agreement that in no event should the insurance company be liable thereon if the taxicab company, in operating its automobiles, permitted its employees to run them at a rate of speed exceeding the speed limit prescribed by the ordinances of the city of Spokane, and that the automobile operated by the employee which ran down and killed Burger was at that time being run at a speed exceeding the speed limit provided by such ordinances. For a third defense, it alleged that the death of Burger did not result from the injuries received by being run into by the taxicab company's automobile, but by the negligence and malpractice of the physician called in to attend him for his injuries. For a fourth affirmative defense, it alleged that the respondent failed to lend such co-operation and assistance as lay in its power in the defense of the original action.

The affirmative allegations in the answer were put in issue by a reply, and a trial had before the court sitting without

a jury, which resulted in a judgment in favor of the taxi-cab company. The insurance company appeals.

The appellant first contends that the evidence is insufficient to show a loss actually sustained and paid by the respondent in satisfaction of a judgment, within the meaning of the conditions of the policy. It is not denied that a judgment may be paid and satisfied by a judgment debtor by the giving of a promissory note for the amount thereof to the judgment creditor, but the contention is that the note must be given in good faith, having in view the purpose and object of payment, with the intent that the note shall afterwards be paid, and that these elements are wanting in the instance before us. But we fail to discover in the evidence anything that seems to justify this conclusion. The direct evidence of the parties making the settlement is to the contrary, and it will be remembered that the terms of the proposed payment and satisfaction were made known by the administratrix to the judge sitting in probate and received his sanction and approval before the settlement was made. It seems to us that this latter fact is alone sufficient to dispel any idea of bad faith that might arise from the transaction itself, and sufficient to require some direct and cogent proof of bad faith before it can be held that the transaction is not what it purports to be. It is true that the note was not secured, and the respondent apparently had sufficient property out of which the judgment could be made. But the company's other liabilities were not shown, and to have levied upon the property would certainly have destroyed the respondent's business, and possibly forced it into bankruptcy when but a partial satisfaction of the judgment might be obtained, whereas it may be paid in full by the present arrangement. It is no answer to say that the note may never be paid at all, or that it may be compromised and settled for less than its full amount after the assured is reimbursed by the surety company. This can happen no matter how the note is paid. Had the assured paid the judgment in cash out of its own

funds, or paid it in money borrowed from another, there could be a secret agreement to repay it, or some part of it, to the assured after the collection is made from the insurance company. But this is beside the question. The real question is, is there such an agreement; and before this question can be answered affirmatively, there must be some satisfactory evidence to that effect. In this record, as we say, there is no such evidence.

That a note given in satisfaction of a judgment may amount to a loss actually sustained and paid within the meaning of an insurance policy containing such a condition was held by us in *Seattle & San Francisco R. & Nav. Co. v. Maryland Casualty Co.*, 50 Wash. 44, 96 Pac. 509, 18 L. R. A. (N. S.) 121. In that case we said:

"The argument is made that there is no loss within the meaning of the above until cash has been actually paid in satisfaction of the judgment. The conveyance of property in satisfaction of the judgment would certainly establish a loss; at least to the extent of its value. The execution of a note in exchange for satisfaction is in legal effect equivalent to the exchange of property therefor. It confers a right to invoke legal process to seize and levy upon property in value equal to the amount of the note. This precise question under a policy identical with this one was determined adversely to appellant's contention in *Kennedy v. Fidelity & Casualty Co.*, 100 Minn. 1, 110 N. W. 97, 117 Am. St. 658, 9 L. R. A. (N. S.) 478. We quote the following pertinent language from the opinion in that case: 'But the whole argument of appellant rests upon the claim that the mere giving of the notes did not amount to a loss actually sustained, for the reason that the maker of the notes and the guarantor might never be called upon to make payment, might become insolvent, that there is no certainty they will ever be paid, and, if not paid, there is no loss actually sustained. This means that the party assured, no matter what his financial condition might be, would be compelled to raise the actual cash within sixty days and pay it to the judgment creditor, or be foreclosed from enforcing the indemnity against the company. If the position is sound, the money could not be raised by borrowing at a bank, or at any other place, upon

promissory notes secured either by a signer or by property, because, before the notes became due, the property might became worthless, deteriorate in value, or the parties might become insolvent, and no actual payment ever be made; hence no loss. Fairly construed, the language means simply that the judgment must be paid and satisfied within sixty days from date of its entry, and, when such judgment is paid or satisfied, the loss is actually sustained. Of what consequence is it to the company whether respondent has on hand immediate cash to pay the judgment, or whether the judgment debtor is compelled to borrow that amount on the most favorable terms, or whether he makes the payment and then secures satisfaction by the execution of promissory notes running direct to the judgment creditor? Logically there is no difference in the method, and in either case it amounts to a payment and satisfaction of the judgment. If the assured accomplished the satisfaction and payment of the judgment by executing and delivering the promissory notes above described, the good faith of that transaction was hardly open to question, even though it gave the assured the advantage of collecting from appellant company the amount of insurance before the notes came due.' The good faith attending the execution of the note in the case at bar is manifest from the record, and, as said in the above case, that matter is not open to question; since, by means of the note, the respondent accomplished satisfaction and payment of a valid judgment. The Minnesota case cited is also reported in 9 L. R. A. (N. S.) 478. In a note following the case as there reported is the following statement: 'The conclusion reached in the above case, that the giving of a note amounts to a loss actually sustained by the person indemnified within the meaning of a contract of indemnity, where the note is accepted by the creditor as actual payment and satisfaction of the original debt, has the sanction of all the authorities.' In support of the statement the following authorities are cited in the note, all of which we have examined and find to be in point: *Bausman v. Credit Guarantee Co.*, 47 Minn. 377, 50 N. W. 496; *Lee v. Clark*, 1 Hill (N. Y.) 56; *Wilson v. Smith*, 23 Iowa 252; *Gardner v. Cooper*, 9 Kan. App. 587, 58 Pac. 230, 60 Pac. 540; *Pasewalk v. Bollman*, 29 Neb. 519, 45 N. W. 780, 26 Am. St. 399; *Flannagan v. Forrest*, 94 Ga. 685, 21 S. E. 712."

The evidence of good faith in that case was, if there is a difference, less direct than the evidence in the case at bar, and the conclusion there reached is direct authority for the same conclusion here.

It is further suggested, in this connection, that the judgment was not paid within ninety days from the date of its rendition. But is was paid within ninety days from the time of its affirmance by this court, and we think this within the meaning of the policy. To construe it otherwise would render the conditions of the policy contradictory and unenforcible, since the company is elsewhere granted the right to appeal in cases where it takes upon itself the defense of the action. If it does appeal, then clearly the maturity of the contract must be postponed until judgment is reached on the appeal, else the appeal is rendered nugatory.

The appellant next contends that there can be no recovery over against it by the respondent because it appeared on the trial of the original cause that the liability of the respondent arose from a violation on its part of the ordinances of the city of Spokane fixing the limit of speed at which an automobile may be driven on the streets of that city. But this question is hardly open to the appellant in the broad aspect in which it is presented by it. The policy contained no condition purporting to exempt the insurance company from liability for an accident caused by the violation of a speed ordinance on the part of the assured; the effort to insert such an agreement in the policy was by parol. We are clear that this was not permissible. The appellant was not a mere common law surety. On the contrary, it fixed the limits of its liability by a written contract elaborate and minute in its details. Having reduced its agreement to writing, it cannot, of course, add to, limit, or otherwise vary the terms thereof by showing a parol contemporaneous agreement on the same subject-matter. As written, the contract is broad enough to cover a loss sustained by the assured from

an accident arising because of a violation of a speed ordinance by one of its automobile drivers.

The only question that is open to the appellant, therefore, is whether such a contract is void as against public policy. Answering this question, we are clear that the contract is not so void. Undoubtedly a contract indemnifying another against consequences arising from wilful violations of a statute, or from the commission of crime generally, committed by the assured himself, is·void for the reason given, but one may lawfully insure another against the consequences of such acts committed by his servants and employees, if such acts are not directed by or participated in by the assured. If this were not so, bonds taken to insure against the misappropriation or embezzlement of funds by employees generally would be void, and we need not go beyond our own decisions to find authority to sustain obligations of this character.

The question suggested in the third affirmative defense is not seriously pressed in this court. Indeed it would seem that the defense was not open to the appellant in this action. It had charge of the action for damages, and if other causes than the wounds inflicted by the automobile caused the death sued for, it should have been made a defense in that action. Failing to urge it there, or urging it and suffering defeat, estops the appellant from urging it as a defense here.

Finally, it is claimed that the respondent violated that clause of the policy requiring it to render such cooperation and assistance in the defense of the action as lay in its power. It appears that, at the inquest held on the death of Burger, counsel who generally represented the respondent appeared and questioned certain of the witnesses, among whom was an officer of the respondent. In his examination at that hearing, the officer, in answer to questions of counsel, made certain statements concerning the instructions given the different automobile drivers with reference to their duties, which conflicted with his evidence at the trial of the action

for damages, and this fact was shown in the latter trial by way of his impeachment. It is this conduct of the respondent's officer that is thought to violate the condition of the policy referred to. But it does not appear that the officer wilfully testified falsely at the inquest, or that his testimony was anything more than the result of a mistake on his part. Nor is it shown that it in any way affected the verdict of the jury. Clearly under such circumstances it would be a harsh remedy to avoid the policy.

There is no reversible error in the record, and the judgment will stand affirmed.

CROW, C. J., MORRIS, MAIN, and ELLIS, JJ., concur.