# PACIFIC INDEMNITY CO. v. McDONALD et al.

## No. 9184.

Circuit Court of Appeals, Ninth Circuit.

Nov. 6, 1939.

James G. Wilson and John F. Reilly, both of Portland, Or., for appellant.

Harvey S. Benson, of Portland, Or., for appellee Ted McDonald.

Butler & Jack and George L. Hibbard, all of Oregon City, Or., for appellee Evelyn Brune.

Before WILBUR, HANEY, and HEALY, Circuit Judges.

WILBUR, Circuit Judge.

On August 16, 1936, at about 10:15 p.m., the appellee, Evelyn Brune, was severely injured in an automobile accident on the Mount Hood Loop Highway in Oregon. She was riding as a guest of the appellee, Ted McDonald, who was driving the automobile on a trip to visit a friend of appellee Brune. The automobile left the highway at a turn and landed upright in a ditch. Appellee Brune was struck by a piece of timber about three feet long and rendered unconscious. McDonald was also rendered unconscious and injured, but not seriously. No one else saw the accident.

The appellant Pacific Indemnity Company had issued a policy of liability and accident insurance covering the automobile, which applied to the liability of Ted McDonald to appellee Evelyn Brune, if any.

Evelyn Brune brought suit against Ted McDonald for $27,069.70 damages alleged to have been suffered by her at the time of the accident as a result of the gross carelessness of the appellee McDonald, resulting from his intoxication at the time of the accident. Thereupon, the appellant brought this proceeding for declaratory relief in the District Court of the United States for the District of Oregon, basing federal jurisdiction upon diversity of citizenship.

The appellant claimed that it had been relieved from any liability on the policy which may have resulted from the accident because the appellees were fraudulently conspiring to procure a judgment against appellee McDonald, although because of the contributory negligence of the appellee Brune there was a good defense to the action brought by her for damages in a state court of Oregon. The appellant further alleged that the appellee McDonald had breached the conditions of his policy by false statements concerning the accident, and by a failure to cooperate with the appellant Indemnity Company in the defense of that action. The appellee McDonald answered and admitted that on August 18, 1936 he had falsely stated that his car had been forced off the road by an oncoming car, but that a week later, on August 25th, he had corrected the statement and had truly stated the facts concerning the accident to the appellant. He denied the charges of collusion and non-cooperation. Appellee Brune in her answer likewise denied the charges. Appellee Brune demanded a jury trial. This was objected to by the appellant and denied by the court. In a trial before the court without a jury the court found against the charge of fraudulent conspiracy and, declining to pass upon the other issues, ordered the proceeding dismissed. Subsequently, the court rescinded its prior order denying the motion of appellee Brune for a jury trial and ordered a trial of the other allegations of non-cooperation and false statements before a jury as "legal issues", upon which appellees were entitled to a jury trial as of right. The jury, as to the false statements which were admitted, found that the appellant was not prejudiced thereby and upon the issue of non-cooperation found that there was no

failure on the part of McDonald to cooperate in the defense of the action brought by appellee Brune. Thereupon, a judgment was rendered in which the prior trial before the court was referred to as disposing of all matters "except whether or not the assured breached the conditions of the insurance policy by issuing false statement or by failure to cooperate". The verdict of the jury, answering interrogatories as above stated, was incorporated in the judgment and it was adjudged "that complainant take nothing by its complaint herein and that judgment be and the same is hereby entered herein in favor of said defendants" and for their costs.

Two points are relied upon by the appellant on this appeal. The first point is that the case should have been tried throughout on the equity side of the court, and the second, that "breaches of the conditions of the policy avoided the policy as to the accident in question".

### The Right to a Jury Trial.

■ The nature of an action for declaratory relief is correctly stated in the appellees' brief. It "is neither legal nor equitable, but sui generis." In Borchard on Declaratory Judgments, p. 120, it is stated:

"Declaratory relief is neither strictly equitable nor legal, although, as will presently be observed, its historical sources are almost exclusively equitable."

■ The Federal Declaratory Judgments Act provides:

"Sec. 274D [Judicial Code section] * * * (3) When a declaration of right or the granting of further relief based thereon shall involve the determination of issues of fact triable by a jury, such issues may be submitted to a jury in the form of interrogatories, with proper instructions by the court, whether a general verdict be required or not." 28 U.S.C.A. § 400(3).

The phrase of the statute "triable by a jury" must relate to a case triable as of right by a jury under the Seventh Amendment to the Federal Constitution. If this is the correct exposition of the phrase of the statute it was the intent of Congress that the mere change in the form of proceeding from a common law action to one for declaratory relief should not affect the right of the parties to a trial by jury as it existed had the action been brought at common law or in equity, as the case may be The trial court was of opinion that

some issues of fact were essentially equitable in nature and others were essentially legal in nature, and disposed of the allegations of fraud and collusion upon the theory that they were equitable in nature and eventually submitted to the jury the question of false statements and failure to cooperate on the theory that these issues of fact were legal in nature. While the subject is not without difficulty (see Borchard on Declaratory Judgments, p. 119) it is clear we think that issues of fact are neither legal nor equitable but that their disposition by the court or jury, as the case may be, depends upon the setting in which the issues are framed. If the issues are raised in an action at law the right to a jury trial obtains and if raised in an action in equity it may be determined by the court without a jury, or the court may call to its aid a jury whose verdict is advisory. In the case at bar we have an appellant who has executed an insurance policy and who anticipates that an action will be brought upon that insurance policy by the person insured or by an injured person subrogated to his right. The insurance company claims that it has a just defense to this action arising out of the conduct of the insured person and also of the injured person. The issue of fraud and collusion for the purpose of obtaining a judgment by the injured person against the insured is in legal effect no more than an allegation of non-cooperation. In the absence of the insurance policy and its agreement for cooperation the insured would have a perfect right to confess judgment in favor of the injured person regardless of whether or not there was any legal liability for the injury. It follows from what we have said that we simply have a situation herein where a party who has issued a policy of insurance anticipates a suit thereon by the insured or one subrogated to his rights and to avoid delay brings the matter before the court by petition for declaratory relief. In such a proceeding, although the parties are reversed in their position before the court, that is, the defendant has become the plaintiff, and vice versa, the issues are ones which in the absence of the statute for declaratory relief would be tried at law by a court and jury. In such a case we hold that there is an absolute right to a jury trial unless a jury has been waived. This is the view of the Circuit Court of Appeals for the Fourth Circuit (Ætna Casualty & Surety Co. v. Quarles, 92 F.2d 321);

and the Circuit Court of Appeals for the Third Circuit (United States Fidelity & Guaranty Co. v. Koch, 102 F.2d 288).

Decisions of courts, when the right to a trial by jury has been involved in cases arising in different forms of actions, point to the same conclusion. For instance, in a decision of the Supreme Court of California (Donahue v. Meister, 88 Cal. 121, 25 P. 1096, 1098, 22 Am.St.Rep. 283) dealing with the right to a trial by jury in a statutory action to quiet title, the court made the following statement which is pertinent to the question involved in the case at bar:

"If, under these circumstances, defendant had commenced an action against plaintiff to recover possession, it would have been conceded by all that either party would have been entitled to a jury trial. But it is equally clear that plaintiff, by first bringing suit and thus inverting the parties, could not deprive defendant of his right to a jury. If it were not for the provision of the Code, plaintiff would have been compelled to wait until defendant commenced his action, and then there would have been no question about the right to a jury; but, while the legislature had the power to grant the plaintiff the privilege of himself commencing the suit, it had not the power to give him, and we think did not intend to give him, the privilege of thus depriving defendant of his constitutional right."

See, also, Reiner v. Schroeder, 146 Cal. 411, 80 P. 517; Butts v. Butts, 84 Kan. 475, 114 P. 1048; First Nat. Bank of Dickinson v. Kling, 65 N.D. 264, 257 N.W. 631. See general discussion of the principle involved in 16 R.C.L. 212, § 29; 35 C.J. 159, § 30.

It will be observed that we are not here concerned with the power of Congress to deprive the parties in an action for declaratory relief of the right to trial by jury because it has expressly refrained from doing so. 28 U.S.C.A. § 400(3). The new rules make similar provisions. Rules of Civil Procedure, Nos. 57, 38 and 39, 28 U.S.C.A. following section 723c.

■ The entire case should have been submitted to a jury. The factual issues should not have been tried piecemeal. But the appellant cannot, and does not, claim error in submitting some of the issues of fact to the court while it was vigorously contending that all issues should be so decided. The finding of the court on the issues of fact it passed upon being favorable to the appellees they do not complain.

Was the appellant entitled to judgment upon the admitted or uncontroverted facts?

The appellant specifies thirty-two points on appeal, many having to do with the refusal of its proposed instructions to the jury, but has limited its brief to the claim of error in submitting any of the factual issues to a jury, and to a second point, in effect, that the admitted or uncontroverted facts and the law require a judgment of nonliability in its favor. We have already disposed of the first point. The second point is stated thus by the appellant: "Breaches of the conditions of the policy avoided the policy as to the accident in question."

■ The first question upon the admitted facts is as to the effect of the false statement made twice on August 18th, two days after the accident, as to the cause of the accident, but withdrawn and repudiated on August 25th when the appellee admitted the statements of August 18th were false, and claimed that the falsehoods were the result of his fear of a criminal prosecution arising from having operated his car while intoxicated and thus injuring his guest, appellee Brune. Appellees claim that the appellant was not prejudiced by these falsehoods and that, consequently, under the law of Oregon McDonald did not breach the contract. The jury so decided. The appellant does not claim that it was prejudiced by the false statements but relies upon the claim that the false statements of such a material fact ipso facto breached the insurance policy. The question is one of local law and is controlled by the law of the state of Oregon where the policy issued, the accident occurred, and the case was tried. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. Undoubtedly, if McDonald had persisted in such false statements he would have avoided the policy. Allegretto v. Oregon Automobile Ins. Co., 140 Or. 538, 13 P.2d 647, 648. The court there stated the controlling rule as follows: "When he [the insured] does speak, however, it must be to tell the truth. When the misrepresentation concerns a material matter and substantially affects the right of the insurer, there is unquestionably a breach of the policy." This decision no doubt modified the earlier decision by the same court in Riggs v. New Jersey, etc., Plate Glass Co., 126 Or. 404,

411, 270 P. 479, 482, where it is said: "* * it should be shown that the failure to cooperate affected the verdict or judgment in the original damage action. Taxicab Motor Co. v. Pacific Coast Casualty Co., 73 Wash. 631, 132 P. 393, 396." In the later case (Allegretto v. Oregon Automobile Ins. Co., supra) it is said: "We think it is going too far to say that it must be shown that the misrepresentation affected the verdict", citing, Coleman v. New Amsterdam Casualty Co., 247 N.Y. 271, 160 N.E. 367, 72 A.L.R. 1443. Appellant relies upon the case cited from New York (Coleman v. New Amsterdam Casualty Co., supra), as showing that a refusal to cooperate except upon an untenable demand was ipso facto a breach of the policy. But the court was there dealing with an absolute refusal to cooperate by revealing the facts of the case within the knowledge of the insured. Such conduct was necessarily prejudicial to the right of the insurance company to defend the action.

■ The prompt withdrawal of the falsehood cured the default in the absence of some showing that the company was prejudiced by the delay in telling the truth.

As to the question of cooperation other than the acknowledged falsehood, appellee McDonald testified that he never refused to cooperate; that he was at all times willing to verify and file an answer that spoke the truth; that no answer that was in accordance with the truth was ever submitted to him, although he awaited the same. While we are concerned with his conduct in determining whether or not there had been a failure to cooperate, we also point out that appellee Brune testified in this proceeding and denied that she drank any intoxicating liquor on this trip. She specifically denied that she drank whiskey from the pint bottle of Monogram Whiskey carried by appellee McDonald and denied that she drank beer with him on the occasion of this trip. She testified that she saw no evidence of intoxication on the part of appellee McDonald, but that she objected to his drinking, and that her objections were ignored. Shortly before the accident, she protested against the speed at which appellee McDonald was driving on the curves, but her protests were entirely ignored. Dr. McCain, who attended appellee Brune immediately after the accident, testified that there was no apparent evidence that she had imbibed any intoxicating liquor.

The statement of appellee McDonald made August 25, 1936, is shown in the margin.[1] It is stated therein that "Miss Brune did not have over three or four drinks all

---

[1] "Portland, Oregon, Aug. 25, 1936. Page One.

"My name is Ted J. McDonald, age 38, residence Hilcrest Hotel. Regarding accident of Aug. 16, 1936, at about 10:15 P. M. on the Mt. Hood Loop Road at a point about 5 miles south of Hood River, Ore. On Aug. 15, 1936 (Saturday night) I had a good many drinks and was intoxicated. I got to bed at about 2:30 A. M. Sunday morning Aug. 16th. I arose about 9:00 A.M. Aug. 16. On the evening of Aug. 15th I had purchased a pint of Monogram Rye and a friend of mine, Jack Small, who works for the Portland Gas & Coke Co. and I had each taken one drink out of the bottle. We had the drink in my room at the Hillcrest Hotel and we had the drink on Sunday morning. I had arranged on Aug. 15 at noon to take Miss Evelyn Brun around Mt. Hood Loop and stop at Hood. River. We were having lunch together at the time. We planned the trip. Miss Brun was not out with me on the Saturday night party. She had an aunt and uncle in Sunday for dinner,
        "(Signed Ted McDonald)
"Page Two. so we were unable to get started until 3:30 P.M. Unable to get started until 3:30 P.M. I left my hotel at 3:00 P.M. or about that time and picked her up at her home in Jennings Lodge where she lives with her mother. I had the pint bottle of Monogram with me when I met her and it was about three quarters full.

"Shortly after we started out we each had a drink of whiskey out of the bottle. Miss Brun did not have over three or four drinks all together. We stopped at Battle Axe Inn at Government Camp and met a man friend of Miss Brun's there. I offered him and he accepted a drink. I believe I had a drink with this man. I don't remember whether Miss Brun did or not.

"Miss Brun protested against my drinking after we got the other side or east of Government Camp. She suggested that I not drink any more. She asked me not to drink so heavily. I do not know how much of the bottle was left at that time. I did continue to drink
        "(Ted McDonald)
"Page Three. until the bottle was empty. I am not positive whether Miss Brun had any drinks after we left Government Camp. We stopped several places along the road to view the mountain. I think the bottle was empty and had been thrown away ten miles or more before we had an

together". McDonald stated that he "must have gone to sleep" before the accident, and that he was knocked unconscious as a result of the accident.

At the trial appellee McDonald testified that his statement of August 25th was a true statement. He testified that he did not know whether or not he went to sleep, and that he had "no recollection of the accident other than the fact that it happened". Appellee Brune testified that she spoke to him shortly before the accident and he did not answer, although his car was going faster. The evidence would indicate that appellee McDonald honestly might be quite hazy in his recollection of the facts owing to his loss of sleep and excessive drinking. It should be pointed out, however, that appellee McDonald vacillated in his statements as to whether or not appellee Brune drank intoxicating liquor during the trip and as to whether his condition was such as to indicate to her that he was so under the influence of intoxicating liquor as to give her notice of her danger. At the trial he denied that his condition of intoxication was observable, or that appellee had done more than raise the whiskey bottle to her lips. But this was after he had stated that she had had not more than three or four drinks.

The appellee McDonald insisted that in his answers in the state court action he should and would admit his intoxication. He declined to implicate Miss Brune in his drinking and maintained that the answers prepared for him by the attorney for the appellant were untrue. He testified that he objected to the allegation that this was an overnight pleasure trip, and to the allegation "that plaintiff [appellee Brune] was fully aware, from prior association with defendant [McDonald] of the defendant's habits in respect to the use of intoxicating liquors and fully aware of his condition on said August 16, and if defendant's driving was in any way affected by reason of intoxicating liquor plaintiff was aware thereof, or in the exercise of reasonable care should have * * * seen and appreciated the same, but plaintiff continued on said trip as a willing companion of the defendant." He testified as to his talk with appellant's attorneys as follows: "And then, further, I told him that he would have to strike out that part where 'the plaintiff [appellee Brune] joined with the defendant [McDonald] in all the pleasures and activities in which the defendant engaged', which was not true. * * * He had to strike out also 'the plaintiff was fully aware and a willing participant therein' meaning participating in whiskey, 'that plaintiff was herself guilty of negligence proximately contributing to the accident in

accident. I was not staggering when we got out of the car to view the scenery.

"My average speed was 45 to 50 miles per hour when I had drive on the hiway. When we were driving along the hiway I do not recall of having any difficulty in driving the car.

"When we were at a point about 5 miles from Hood River and driving toward Hood River at about 10:15 P.M. I must have gone to sleep and my car ran off the right side of the road at a culvert. I was knocked unconscious. Miss Brun was injured by a

"(Ted McDonald)

"Page Four. board coming through the windshield and striking her in the chest. A farm boy nearby helped me to get Miss Brun in his car and we took her to Hood River General Hospital. She was semi conscious.

"Dr. C. W. McCain of Hood River was called to the hospital or may have been there when we arrived. He treated Miss Brun and took me home with him where I stayed all night. Miss Brun is still under the care of two nurses, but the doctor has indicated that she has a good possibility of recovering.

"Miss Brun did not at any time protest the manner in which I was operating the car. She does not drive herself. Evelyn Brune is age 24 to 26, living at home with her mother and is a singer with bands and orchestras. I met Miss Brun about a year ago at a bridge party. I have probably been out with her six times in the last year. She formerly lived in Hood River and her

"(Ted McDonald)

"Page Five. mother worked in one of the county office when they lived there. She was the sole support of her mother except for a very small amount her mother received from her father. Miss Brun about two years ago worked for the Northwestern Electric Co. in sale of illumination.

"I do not have any idea of what my speed was at the time of the accident. There was no other car in any way involved in the accident.

"The farm boy who picked us up is now reported to have been sitting on his front porch. I don't know whether he saw the accident.

"(Ted McDonald)"

452

which she was injured by such participation and continuing on said trip.' I told him if he would strike that out and put in there 'and return to Portland that same night', I would sign it—very glad to." He further explained that in his opinion the answer as drawn by the appellant's attorneys implied that she had drunk as much whiskey as he had, and that this was not true.

The appellant's attorneys thereupon prepared another answer, admitting that the defendant McDonald "partook of alcoholic liquor during the course of the trip on which the accident occurred," and that he lost control of the automobile. By way of a separate defense it was alleged "that at various times on said trip plaintiff also drank from said bottle", and that "plaintiff and defendant each consumed two glasses of beer". This answer was presented to appellee McDonald who refused to verify it.

The attorney for appellant testified that "* * * he said he wanted to sign an answer that would admit everything Miss Brune said about him and would say nothing whatever about her, that [he] would not say she drank, would not say that she knew his condition, would not say anything of that sort. He refused to sign any other answer. He said he was very drunk * * *; he kept getting drunker in all these conversations, and that he wanted to allege it straight out so I said that if he wanted an answer like that I would draw it but that he would probably get in jail and he would have to get somebody else to take the responsibility of telling him to sign it, and I wanted that responsibility assumed in writing, or at least in some form so that he couldn't blame me afterwards if he got into the penitentiary. No such answer was prepared." The attorney for the appellant sent him to attorney Recken for such advice and told him to "come back prepared to sign an answer of some kind; otherwise the insurance company was through with him; that is, the insurance company would not appear for him or accept any responsibility in his behalf in the law suit. * * * He agreed to come back and did not do so." The appellee consulted attorney Davis of the firm of Davis and Harris, and they advised the attorneys for the appellant that appellee McDonald was ready to sign an answer that conformed to the facts and asked whether or not the Indemnity Company would cooperate in so doing. The attorney for the appellant testified that Mr. Davis came in and said he would advise appellee McDonald "to come in and sign any answer I presented to him". Later conversations developed that the attorney for the company and Mr. Davis acting for appellee McDonald despaired of getting an answer from McDonald.

The difficulty in the case was in getting a truthful answer by the appellee McDonald that would state a defense. The only possible defense on the merits was one of contributory negligence and under the facts as stated by appellee McDonald there could be no truthful charge of contributory negligence. The appellee Brune had objected to the excessive drinking of the appellee McDonald and had protested about his driving so fast. After his careless driving began she had no opportunity to leave the car. Under these circumstances, the verdict of the jury that there was no failure to cooperate in the defense of the action was amply supported by the evidence.

The appellant's attorneys declined to take the responsibility of an answer, which asserted under oath that their client, appellee McDonald, had committed a felony. The only purpose of such a self incriminating allegation was to lay a basis for an allegation that appellee Brune cooperated with the appellee McDonald therein. But according to her testimony she did not do so. McDonald subsequently modified his statement as to appellee Brune's drinking to not more than two or three drinks. The appellant cannot base a charge of non-cooperation upon the failure to verify an answer where appellant advised against making such an answer and sent appellee McDonald to another attorney who also advised against it. It should not be forgotten that even if appellee McDonald had no defense against the charge of intoxication and gross negligence he nevertheless was entitled to have the assistance of the appellant upon the issue of damage. His liability was not limited to the sum of five thousand dollars, although that of the company was so limited.

The evidence also shows that appellee Brune served an amended complaint upon the appellee McDonald in the action in the state court, in effect withdrawing the express charge that McDonald was intoxicated at the time of the accident and merely alleging that he was guilty of gross negligence resulting in the accident. This amendment would have permitted an answer on the part of McDonald which did

not expressly admit intoxication unless he desired to charge contributory negligence on the part of appellee Brune in continuing to ride with a drunken driver. Whatever else may be said of this evidence as tending to show collusion between the parties to the action in the state court it is clear that this evidence did not justify taking the question of non-cooperation from the jury.

We conclude that there was substantial evidence supporting the verdict of the jury.

Judgment affirmed.